**UNITED STATES, Appellant,**

v.

**Edwin MOURE–ORTIZ, A/K/A Agui, Defendant, Appellee.**

**No. 98–1128.**

United States Court of Appeals, First Circuit.

Heard March 3, 1999.

Decided July 8, 1999.

Antonio R. Bazán, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and José A. Quiles–Espinosa, Senior Litigation Counsel, were on brief, for appellant.

Bruce J. McGiverin, by appointment of the Court, for appellee.

Before TORRUELLA, Chief Judge, SELYA, Circuit Judge, and ACOSTA,* Senior District Judge.

* Of the District of Puerto Rico, sitting by designation.

ACOSTA, Senior District Judge.

This is an appeal by the Government from a sentence imposed following a guilty plea pursuant to a plea agreement tendered under Fed.R.Crim.P. 11(e)(1)(C). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(b), (c) and review *de novo. United States v. Ticchiarelli,* 171 F.3d 24 (1st Cir.1999). We reverse and remand.

Defendant Edwin Moure Ortiz ("Moure") was indicted by a grand jury on February 28, 1996, and charged with conspiracy to distribute in excess of five kilograms of cocaine (Count One); aiding and abetting in the possession with intent to distribute two kilograms of cocaine (Count Two); carrying a firearm during and in relation to a drug trafficking crime (Count Three); and using a communication facility to commit and facilitate the crime of distribution of narcotics (Count Four).

On March 4, 1997, Moure pled guilty to counts Two and Three, conditioned upon Moure's right to appeal the district court's denial of his motion to dismiss the firearms count. Sentence was scheduled for July 11, 1997.

Prior to sentencing, Moure filed a motion for downward departure pursuant to United States Sentencing Guidelines ("Guidelines") § 5H1.4 due to his "extraordinary physical impairment." He also requested that Dr. Wilfredo Díaz Romero, the medical director of MDC Guaynabo, be permitted to testify regarding his medical condition.

The Court held a hearing on July 10, 1997 at which Dr. Díaz Romero testified that Moure suffered from *polycythemia vera*,[1] a condition which constituted an "extraordinary physical impairment" rendering Moure seriously infirm. The Court took Moure's request for downward departure under advisement and sentencing was rescheduled for July 29, 1997.

On July 29, 1997, the Court granted a motion by Moure to withdraw his guilty plea. Subsequently, the United States and Moure negotiated an 11(e)(1)(C) plea agreement pursuant to which Moure would plead guilty to Count Two and the remaining counts would be dismissed. This second plea agreement called for a specific sentence of 84 months of imprisonment based on an adjusted offense level of 28.[2]

On August 22, 1997, the Court held a change of plea hearing, during which Moure entered a plea of guilty to Count Two of the indictment. After advising the defendant of his rights, the Court stated as follows: Very well, the plea agreement is hereby order[ed] filed. The Court does hereby accept the plea agreement and will sentence the defendant in accordance with the plea agreement after receiving the presentence report.

After the defendant had accepted the Government's version of the facts, the district court also advised the defendant as follows:

Even though the Court has accepted the plea agreement, I want you to be aware that the guideline sentence in the presentence report may be different from the one that has been contemplated in these negotiations as a result of the findings of the pre-sentence report. **But the Court in this hearing has accepted the plea agreement and will sentence you according to the plea agreement.** (emphasis ours).

---

1. A disorder characterized by abnormal proliferation of all hematopoietic bone marrow elements and an absolute increase in red cell mass and *total* blood volume. Also known as *erythremia, erythrocythemia, Vaquez–Osler disease.* Dorland's Medical Dictionary 1327 (28th ed.1994).

2. A Base Offense Level of 26 was established pursuant to U.S.S.G. Section 2D1.1(7) and two additional levels were added for the possession of a firearm during the commission of a drug trafficking crime pursuant to U.S.S.G. Section 2D1.1(b)(1). Combined with defendant's criminal history category of I, the adjusted offense level of 28 yielded a guideline imprisonment range of 78—97 months.

Having thus declared its intentions for the record, the parties[3] were nonplussed when the Court announced at the sentencing hearing held on October 10, 1997, that it would, *sua sponte,* depart downward from the agreed-to specific sentence of 84 months due to Moure's extraordinary physical impairment.

Despite the Government's objections to the Court's unanticipated downward departure, and its explanation that Moure's physical condition had been taken into account during the renegotiations that followed defendant's withdrawal of his original guilty plea, and despite the Court's acknowledgment that "[t]he usual case ... is that the Court either accepts the plea agreement or gives the defendant an opportunity to withdraw his plea.", the Court, finding that extraordinary circumstances and the interests of justice so warranted, proceeded to depart downward from the expected 84 month sentence to the Guidelines level identified in the Presentence Report,[4] and sentenced defendant to 63 months.

## DISCUSSION

■ A contractual approach to disputes over plea agreements "ensures not only that constitutional rights are respected, but also that the integrity of the criminal process is upheld." *United States v. Papaleo,* 853 F.2d 16, 19 (1st Cir.1988).

A principal purpose of an 11(e)(1)(C) agreement is to permit the Government and the defendant to come to an agreement as to a specific sentence.

Thus, Rule 11(e) Fed.R.Crim.P. provides in pertinent part as follows:

**(E) Plea Agreement Procedure**

(1) **In General.** The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

Once the court accepts an 11(e)(1)(C) agreement, an expectation is created in the parties that the court—if it proceeds to impose sentence—will indeed sentence defendant in conformity with the dispositions of the contract.

■ After the district court provisionally accepted the agreement, its only recourse was to reject the agreement if it found the negotiated sentence unsatisfactory. "If the Court did not find the terms [of the agreement] appropriate, its only option was to reject the agreement in its entirety." *United States v. Mukai,* 26 F.3d 953, 956 (9th Cir.1994). *See also United States v. Gilchrist,* 130 F.3d 1131, 1134 (3d Cir.1997) ("An 11(e)(1)(C) plea agreement, once accepted, binds the district court notwithstanding departures from the applicable guidelines"); *United States v. Veri,* 108 F.3d 1311, 1315 (10th Cir.1997) ("[I]f a sentencing court accepts a Rule 11(e)(1)(C) agreement, it is bound by the agreement and may not modify it".).

---

3. Counsel for defendant had even acknowledged that she could not argue for any further reduction in her client's sentence "because we are bound by our word that we gave previously and by the plea we entered into with the United States ...".

4. The Probation Office's Guidelines level calculations in defendant's Presentence Report had rendered an adjusted offense level of 26 which provides for an imprisonment range of 63 to 78 months.

**4**

In defense of his sentence, Moure argues that Rule 11(e) does not prohibit the Court from unilaterally imposing a more lenient sentence than that specified in a Rule 11(e)(1)(C) agreement. We disagree.

The rule plainly contemplates that plea agreements executed pursuant to subdivisions (e)(1)(A) or (C) are binding on the district court. "[C]ritical to a type (A) or (C) agreement is that the defendant receive the contemplated charge dismissal or agreed-to sentence." Fed.R.Crim.P. advisory committee's note (1979 amendment).

Moreover, the rule does not authorize a district court to accept the agreement at a plea hearing, advise the defendant that he or she will be sentenced in accordance with its terms on the one hand, and on the other disregard its own pronouncements and modify the agreement in accordance with a personal notion of what constitutes a just sentence.

This interpretation is firmly supported by Rule 11(e)'s history:

> The legislative history of 11(e)(3) shows that Congress wished to preclude a district court from accepting a plea agreement which provides for a specific sentence and then imposing a more lenient sentence than that provided for in the plea agreement. The version of 11(e)(3) proposed by the Supreme Court in 1974 stated that "the court shall inform the defendant that it will embody in the ... sentence the disposition provided for in the plea agreement or another disposition more favorable to the defendant than that provided for in the plea agreement." The House Judiciary Committee then deleted the language "or another disposition more favorable to the defendant than that provided for in the plea agreement," and the House affirmed the committee's action by rejecting on the floor an amendment offered to restore the Supreme Court's version of the rule. The Senate accepted the House's version of the rule.

> By deleting the Supreme Court's "more favorable to the defendant" language, Congress evidenced its intent to require a district court to sentence a defendant in accordance with the plea agreement.

*United States v. Semler*, 883 F.2d 832, 833–34 (9th Cir.1989)(internal citations omitted).

Finally, we reject Moure's contention that while Rule 11(e) provides that the defendant may withdraw his plea if a higher sentence is contemplated, it does not provide for the Government to withdraw from the agreement if a lower sentence is envisioned by the district court. "A district court which unilaterally reduces the sentence provided for in an accepted plea agreement deprives the prosecutor of the 'benefit of his bargain'...". *Semler*, 883 F.2d at 834, an action which he or she is specifically authorized to appeal pursuant to statute. *See* 18 U.S.C. 3742(c)(2).

Accordingly, we remand the case to the district court with instructions to vacate the sentence previously imposed, vacate the dismissal of the other counts, and then either sentence the defendant according to the terms of the plea agreement or reject the agreement and afford the Government and Moure an opportunity to renegotiate its terms (or in the alternative, try the case).

**REVERSED AND REMANDED.**