## COMMONWEALTH vs. MARCOS RODRIGUEZ.

Suffolk. September 7, 2011. - January 12, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Practice, Criminal,* Sentence, Plea.

> This court concluded that a judge has the authority under Mass. R. Crim. P.
> 29 (a) to reduce a sentence after the defendant and the Commonwealth had
> entered into a plea agreement in which the Commonwealth agreed not to
> seek indictments against the defendant on pending charges, the defendant
> had agreed to plead guilty and join the Commonwealth's sentencing recom-
> mendation, and the judge had imposed the recommended sentence, where
> it appeared to the judge, acting on his own timely motion to revise or
> revoke a sentence, that justice may not have been done. [258-264] CORDY,
> J., concurring, with whom BOTSFORD, J., joined. SPINA, J., dissenting.

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on July 26, 2010.

The case was reported by *Botsford*, J.

*Kris C. Foster,* Assistant District Attorney, for the Commonwealth.

*Michael A. Waryasz* for the defendant.

*Mark G. Mastroianni,* District Attorney, *& Jane Davidson Montori & Katherine E. McMahon,* Assistant District Attorneys, for District Attorney for the Hampden District & others, amici curiae, submitted a brief.

GANTS, J. The issue in this case is whether a judge has the authority under Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979), to reduce a sentence after the defendant and the Commonwealth had entered into a plea agreement in which the Commonwealth agreed not to seek indictments against the defendant on the pending charges, the defendant had agreed to plead guilty to the charges and join the prosecutor's sentencing recommendation, and the judge had imposed the recommended sentence. We conclude that where, as here, a judge acts on his own timely motion

to revise or revoke a sentence, the judge has the authority to reduce a sentence where "it appears that justice may not have been done" regardless of whether a plea agreement includes an agreed sentence recommendation.[1] See Mass. R. Crim. P. 29 (a).

*Background.* The defendant was charged with possession of a class B substance (oxycodone) with intent to distribute, in violation of G. L. c. 94C, § 32A, and possession of a class D substance (marijuana) with intent to distribute, in violation of G. L. c. 94C, § 32C (*a*).[2] On November 19, 2009, the prosecutor and the defendant, through his attorney, entered into a plea agreement. Under the agreement, the Commonwealth would not seek indictments on these charges, the defendant would plead guilty to the two charges in the Boston Municipal Court Department, and the defendant would agree to the Commonwealth's sentencing recommendation of concurrent committed terms of two and one-half years in a house of correction. That same day, the judge accepted the defendant's guilty plea and sentenced the defendant in accordance with the plea agreement. However, the judge later questioned whether the sentences he imposed were unfairly severe, and on his own motion, he ordered a hearing under rule 29 (a) on January 6, 2010, to consider whether the sentences should be revised or revoked. Immediately after the hearing, the judge revised and revoked the sentences and sentenced the defendant to concurrent terms of two years in the house of correction, with one year to serve and the balance suspended for two years. The prosecutor moved to reconsider, but the judge did not act on the motion.

On July 26, 2010, the Commonwealth filed a petition under G. L. c. 211, § 3, asking a single justice to vacate the revised sentence and remand the case to restore the original sentence.

---

[1]We do not address whether a judge has the authority to reduce a sentence under Mass. R. Crim. P. 29 (a), 378 Mass. 899 (1979), where a defendant, in breach of a plea agreement, moves to revise or revoke. The Commonwealth here does not allege that the defendant committed a breach of the plea agreement.

[2]When the criminal complaint first issued on June 5, 2009, the defendant was charged with trafficking in heroin, morphine, or opium, in violation of G. L. c. 94C, § 32E (*c*), and possession of a class D substance with intent to distribute, in violation of G. L. c. 94C, § 32C (*a*). On August 3, 2009, the Commonwealth reduced the trafficking charge to possession of a class B substance (oxycodone) with intent to distribute, but this reduction was reflected only in the docket, not in an amended complaint.

On October 22, 2010, a single justice reserved and reported the case to the full court.[3]

*Discussion.* The procedure for tendering a guilty plea and sentencing a defendant who has pleaded guilty is governed by Mass. R. Crim. P. 12, as appearing in 442 Mass. 1511 (2004), and G. L. c. 278, § 18.[4] In all criminal cases where the Commonwealth and the defendant have entered into a plea agreement, the judge must be informed of the substance of the agreement that is contingent on the plea. Mass. R. Crim. P. 12 (b) (2). Where a plea agreement includes a sentence recommendation, whether it be a recommendation by the prosecutor that the defendant is free to oppose or an agreed recommendation made jointly by the prosecutor and the defendant, a judge is required to inform the defendant that the judge "will not impose a sentence that exceeds the terms of the recommendation without first giving the defendant the right to withdraw the plea." Mass. R. Crim. P. 12 (c) (2) (A).[5] Neither rule 12 nor G. L. c. 278, § 18, declares that a plea may be vacated or that the Commonwealth may be released from its obligations under a plea agreement where a judge imposes a sentence below that recommended by the prosecutor, even where there is an agreed recommendation in a plea agreement. Rather, where a plea agreement includes an agreed recommendation, rule 12 (b) (1) (B) requires that the recommendation be made "with the specific understanding that the recommendation shall not be binding upon the court." In short,

---

[3]We acknowledge the amicus brief submitted by the district attorneys for the Hampden, Berkshire, Bristol, Eastern, Middle, Northern, and Northwestern districts.

[4]The procedure set forth in G. L. c. 278, § 18, applies in the District Court, the Boston Municipal Court, the Juvenile Court, and a District Court sitting in a juvenile session, but not in the Superior Court.

[5]In the District Court, the Boston Municipal Court, the Juvenile Court, or a District Court sitting in a juvenile session, where there is no plea agreement (or no plea agreement with a sentence recommendation), a defendant or juvenile may plead guilty "with a request for a specific disposition" that "may include any disposition or dispositional terms within the court's jurisdiction." G. L. c. 278, § 18. See Mass. R. Crim. P. 12 (c) (2) (B), as appearing in 442 Mass. 1511 (2004). During the plea colloquy, a judge must inform the defendant or juvenile that the judge will not impose a disposition that exceeds the terms of the defendant's or juvenile's request without giving the defendant or juvenile the opportunity to withdraw the plea. G. L. c. 278, § 18. See Mass. R. Crim. P. 12 (c) (2) (B).

rule 12 protects a defendant from the risk that the judge will exceed the prosecutor's recommendation, but it does not protect the Commonwealth from the risk that the judge will impose a sentence below the prosecutor's recommendation.

The Commonwealth contends that, once a judge accepts the terms of an agreed recommendation in a plea agreement, the judge is bound by the terms of the agreement and may not exercise the authority under rule 29 to revise or revoke the sentence. Implicit in this argument is that rule 12 includes a procedure whereby an agreed recommendation in a plea agreement, once accepted by the judge, binds the judge and bars the judge from later revising or revoking the sentence even if the judge later determines that the sentence is unjustly severe. We conclude that nothing in rule 12 denies a judge the authority to reduce a sentence under rule 29 (a) where the judge timely determines the sentence to be unjustly severe.

"Few, perhaps no, judicial responsibilities are more difficult than sentencing. The task is usually undertaken by trial judges who seek with diligence and professionalism to take account of the human existence of the offender and the just demands of a wronged society." *Graham* v. *Florida*, 130 S. Ct. 2011, 2031 (2010). "A sentencing judge is given great discretion in determining a proper sentence." *Commonwealth* v. *Lykus*, 406 Mass. 135, 145 (1989). In exercising this discretion to determine a just sentence, a judge must weigh various, often competing, considerations, including, but not limited to, the severity of the crime, the circumstances of the crime, the role of the defendant in the crime, the need for general deterrence (deterring others from committing comparable crimes) and specific deterrence (deterring the defendant from committing future crimes), the defendant's prior criminal record, the protection of the victim, the defendant's risk of recidivism, and the extent to which a particular sentence will increase or diminish the risk of recidivism. See generally *Commonwealth* v. *Donohue*, 452 Mass. 256, 264 (2008), and cases cited. Therefore, to impose a just sentence, a judge requires not only sound judgment but also information concerning the crimes of which the defendant stands convicted, the defendant's criminal and personal history, and the impact of the crimes on the victims.

Rule 29 recognizes that "[o]ccasions inevitably will occur where a conscientious judge, after reflection or upon receipt of new probation reports or other information, will feel that he has been too harsh or has failed to give due weight to mitigating factors which properly he should have taken into account." *Commonwealth* v. *McCulloch*, 450 Mass. 483, 487 (2008), quoting *District Attorney for the N. Dist.* v. *Superior Court*, 342 Mass. 119, 128 (1961). In such cases, a judge under rule 29 may "reconsider the sentence he has imposed and determine, in light of the facts as they existed at the time of sentencing, whether the sentence was just." *Commonwealth* v. *McCulloch, supra*, quoting *Commonwealth* v. *DeJesus*, 440 Mass. 147, 152 (2003). A judge, therefore, is not barred from reducing a sentence the judge has imposed until the time limits established in rule 29 to revise or revoke a sentence have expired. The existence of a plea agreement, even a plea agreement with an agreed recommendation, does not bind a judge to a sentence the judge later determines to be unjustly harsh.

We recognize that Federal law comes to a different result under the analogous plea procedure set forth in Fed. R. Crim. P. 11, but the Federal rule differs significantly from our rule 12. The Federal rule recognizes two different types of plea agreements: one where the prosecutor's recommendation does not bind the judge, Fed. R. Crim. P. 11 (c) (1) (B); and another where the recommendation binds the judge once the judge accepts the plea agreement, Fed. R. Crim. P. 11 (c) (1) (A) and (C), (c) (3) (A), and (c) (4). Where the plea agreement is nonbinding, a judge need neither accept nor reject the agreement, and the defendant may not withdraw the plea if the judge imposes a sentence more severe than the prosecutor's recommendation. Fed. R. Crim. P. 11 (c) (3) (B).[6] Where the plea agreement is binding once accepted by the judge, either because the agreement provides that the government will not bring, or will move to dismiss, other charges, Fed. R. Crim. P. 11 (c) (1) (A), or because the parties to the agreement have agreed that "a specific sentence or sentencing range is the appropriate disposition of the case," Fed. R.

---

[6]The judge must inform the defendant that he may not withdraw the plea if the judge imposes a sentence more severe than the prosecutor's recommendation. Fed. R. Crim. P. 11 (c) (3) (B).

Crim. P. 11 (c) (1) (C), a judge must accept the agreement, reject it, or defer a decision until the judge has reviewed the presentence report.[7] A defendant may withdraw the plea if the judge rejects the plea agreement, but if the judge accepts it, the judge "must inform the defendant that . . . the agreed disposition will be included in the judgment." Fed. R. Crim. P. 11 (c) (4). Because the Federal rule provides that a plea agreement, once accepted by the judge, "will be included in the judgment," a Federal judge who has accepted a plea agreement no longer has the authority to revise the sentence, even if the judge had accepted the plea agreement without first requesting a presentence report and learns new information from the report before sentencing. See *United States* v. *Moure-Ortiz*, 184 F.3d 1, 4 (1st Cir. 1999) ("the rule does not authorize a district court to accept the agreement at a plea hearing . . . and [at sentencing] modify the agreement in accordance with a personal notion of what constitutes a just sentence"); *United States* v. *Skidmore*, 998 F.2d 372, 376 (6th Cir. 1993) ("Having accepted the agreement, the district court was required to adhere to the terms contained in the agreement as the parties understood those terms").

In contrast with Fed. R. Crim. P. 11, our rule 12 does not identify any plea agreement where the recommendation shall bind the judge. Where there is a plea agreement, the judge is only bound to allow a defendant to withdraw his plea where the judge imposes a sentence more severe than the prosecutor's recommendation. Mass. R. Crim. P. 12 (c) (2). While Fed. R. Crim. P. 11 (c) (3) (A) requires a judge at the plea hearing to accept or reject a "plea agreement . . . of the type specified in Rule 11 (c) (1) (A) or (C)," our rule 12 (c) (5) (B) requires a judge at the plea hearing to accept or reject "the plea or admission," not the plea agreement. Because even an agreed recommendation under our rule 12 is made "with the specific understanding that the recommendation shall not be binding upon the court," rule 12 (b) (1) (B); because the rule nowhere speaks of a plea recommendation binding the judge; and because a judge at the plea hearing accepts the plea, not the plea agreement, our

---

[7] A judge may review a presentence report before accepting a guilty plea only with the written consent of the defendant. Fed. R. Crim. P. 32 (e) (1).

rule does not bind a judge to a sentence even where the judge informs counsel that the judge accepts an agreed plea recommendation. Where a judge declares in advance of sentencing that the judge accepts the plea agreement and will impose the recommended sentence, the judge is declaring that the judge *expects* to impose that sentence; the judge under our rules may not foreclose the possibility that a lesser sentence may be imposed if the judge timely determines, based on new information or further deliberation, that the lesser sentence better serves the interest of justice.[8]

When the judge accepted the agreed recommendation, he ap-

---

[8]The dissent contends that rule 12 permits a plea agreement that provides for an agreed recommendation that is binding on the judge. *Post* at 265. It claims that the agreement identified in rule 12 (b) (1) (B) — a "[r]ecommendation of a particular sentence or type of punishment with the specific understanding that the recommendation shall not be binding upon the court" — is merely one of the many agreements authorized under the rule, and notes that rule 12 (b) (1) (H) acknowledges that there may be other agreements "involving recommendations or actions." *Post* at 266-267. It contends that an agreement providing for an agreed recommendation that binds a judge is one of these other agreements. *Post* at 267. In fact, the dissent contends that, unless a plea agreement with an agreed recommendation specifically declares that it does not bind the judge, it should be implied that the judge is bound to sentence the defendant to the agreed recommendation once the judge accepts the defendant's guilty plea. *Post* at 267, 272.

There are two flaws in the dissent's argument. First, while rule 12 (b) (1) (H) recognizes the possibility of plea agreements beyond those specified in rule 12 (b) (1) (A)-(G), where a plea agreement provides for an agreed recommendation, the rule provides that the recommendation comes "with the specific understanding that the recommendation shall not be binding upon the court." Mass. R. Crim. P. 12 (b) (1) (B). Contrast Mass. R. Crim. P. 12 (b) (1) (C) ("Recommendation of a particular sentence . . . *which may also include the specific understanding* that the defendant shall reserve the right to request a lesser sentence" [emphasis added]). Second, the dissent recognizes that even a binding plea agreement does not bind a judge to accept an agreed recommendation, but the procedure suggested by the dissent for a judge to reject a binding agreement is contrary to the plea procedure established in rule 12. As noted, *supra*, our rule 12 (c) (5) (B) requires a judge at the plea hearing to accept or reject "the plea or admission," not the plea agreement, and the "plea or admission" is accepted or rejected based solely on the voluntariness of the plea and the factual basis of the charge. Mass. R. Crim. P. 12 (c) (5). Only after the guilty plea is accepted may a judge proceed to sentencing. Mass. R. Crim. P. 12 (c) (5) (C). In essence, the dissent would transform a plea hearing into a preliminary sentencing hearing where a judge must decide whether to accept or reject the agreed recommendation. Where a judge accepts the recommendation, the actual sentencing hearing would become a formality, because

peared to have known little of the defendant's past medical history except that the defendant was presently taking medication for bipolar disorder. It was only at the rule 29 hearing, when he asked the defendant's counsel and, later, the defendant to tell him about the defendant's past medical history, that he learned that the defendant since childhood has suffered from attention deficit hyperactivity disorder and syncope disorder,[9] and that it was only when he was committed to Bridgewater State Hospital for sixty days following his arraignment that his medication was "under control." The judge also learned at the rule 29 hearing that approximately one year earlier the defendant had suffered an injury on the job that kept him out of work for approximately six months, that he had been prescribed Percocet[10] while he was in physical therapy, and that he had begun to abuse prescription medication after the physical therapy ended.[11]

By asking that we interpret rule 12 to bind a judge to an earlier acceptance of an agreed recommendation, the Commonwealth is essentially asking that we interpret our rules to bind a judge to a sentence that the judge agreed to based on incomplete information, and that the judge timely wishes to revise or revoke because he now believes the sentence to be unfairly severe based on information that existed at the time of sentencing. We do not interpret our rules to require such a result.

---

the judge would be barred from imposing any sentence other than the agreed recommendation once it has been accepted.

The dissent's description of our plea procedure reflects Fed. R. Crim. P. 11, not our rule 12. *Post* at 266-267. However, because we respect the concerns raised by the dissent, the Commonwealth, and the amici district attorneys, we shall ask this court's standing advisory committee on the rules of criminal procedure to consider whether amendments to rule 12 are necessary or appropriate and, if so, whether rule 29 should be amended to conform with any such amendments.

[9]The defendant explained that the symptoms of his syncope disorder are "like seizures," in that he has low blood pressure, passes out, and shakes.

[10]Percocet is the brand name for a combination of oxycodone hydrochloride and acetaminophen that is prescribed for the relief of moderate to moderately severe pain. Physicians' Desk Reference 1096-1097 (65th ed. 2010).

[11]The prosecutor was given an opportunity to respond to the information furnished in the rule 29 hearing, but he offered no response. Nor did he ask for additional time to respond.

It is not unfair to the Commonwealth to allow a judge to revise a sentence where justice otherwise "may not have been done." Mass. R. Crim. P. 29 (a). The defendant did not obtain a lesser sentence through a breach of the plea agreement; the defendant presented the agreed recommendation to the judge and did not move to revise or revoke under rule 29. And the Commonwealth obtained what it bargained for: the defendant pleaded guilty and agreed to the prosecutor's recommendation. The Commonwealth should have recognized that its agreed recommendation was made "with the specific understanding that the recommendation shall not be binding upon the court." Mass. R. Crim. P. 12 (b) (1) (B).

Nor does a judge "exercise the . . . executive powers" and thereby violate art. 30 of the Massachusetts Declaration of Rights by revising or revoking a sentence under rule 29 where there was an agreed recommendation in a plea agreement.[12] The judge did not deny the prosecutor the opportunity to indict or reduce the criminal charges brought by the district attorney. Cf. *Commonwealth* v. *Cheney*, 440 Mass. 568, 574 (2003) ("judicial power does not extend to authorize a judge to dismiss an otherwise legally adequate indictment, prior to verdict, finding, or plea" over Commonwealth's objection); *Baglioni* v. *Chief of Police of Salem*, 421 Mass. 229, 232-233 (1995) ("judge may not nol pros a criminal charge or reduce such a charge without the consent of the prosecutor"). The judge simply exercised a quintessential judicial power — the power to sentence — and ultimately concluded that the agreed recommendation was more severe than justice permitted.

*Conclusion.* The case is remanded to the county court for the entry of a judgment denying the Commonwealth's petition.

*So ordered.*

CORDY, J. (concurring, with whom Botsford, J., joins). I concur

---

[12]Article 30 of the Massachusetts Declaration of Rights provides: "In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

with the court's interpretation of Mass. R. Crim. P. 12 (b) (1), as appearing in 442 Mass. 1511 (2004), as presently in effect. The rule does not make a judge a party to a plea agreement containing a joint recommendation on the acceptance of the guilty plea. Nor does it bind a judge to impose the sentence jointly recommended by the prosecutor and defense counsel in such an agreement, or require a judge to allow the Commonwealth to withdraw from its agreement if, on consideration of the information presented at the sentencing phase of the proceeding, the judge concludes that the recommendation is overly harsh or disproportionate in the circumstances. I have every reason to believe, however, that with rare exception, judges honor the joint recommendations of the parties as the carefully considered product of negotiation by attorneys most familiar with the facts and circumstances of the case and the defendant, and bound in their respective duties to exercise executive discretion properly and to provide effective assistance of counsel.

A different rule is provided for judges and parties in the Federal courts, and in a number of other States. While I agree that our rule does not violate the separation of powers clause of the Massachusetts Constitution, the policy reasons articulated by the Commonwealth in the present case are significant, warrant consideration in the rule-making context, and are appropriate for referral to this court's standing advisory committee on the rules of criminal procedure for further review, assessment, and recommendation.

SPINA, J. (dissenting). The court construes Mass. R. Crim. P. 12 (b) (1) (B), as appearing in 442 Mass. 1511 (2004), to *require* that any plea agreement with an agreed recommendation must be made "with the specific understanding that the recommendation shall not be binding upon the court." *Ante* at 258. I do not believe the rule contains such a requirement.

Rule 12 (b) (1) of the Massachusetts Rules of Criminal Procedure, as appearing in 442 Mass. 1511 (2004), states in relevant part:

"The agreement of the prosecutor may include:

"(A) Charge Concessions.

"(B) Recommendation of a particular sentence or type of punishment with the specific understanding that the recommendation shall not be binding upon the court.

"(C) Recommendation of a particular sentence or type of punishment which may also include the specific understanding that the defendant shall reserve the right to request a lesser sentence or different type of punishment.

"(D) A general recommendation of incarceration without regard to a specific term or institution.

"(E) Recommendation of a particular disposition other than incarceration.

"(F) Agreement not to oppose the request of the defendant for a particular sentence or other disposition.

"(G) Agreement to make no recommendation or to take no action.

"(H) Any other type of agreement involving recommendations or actions."

The type of agreement described in subsection (B) is merely one of several *options*. Indeed, subsection (H) suggests that a plea agreement can take virtually any form. This is supported by the Reporters' Notes, which state: "The list of actions set out in this subsection that a prosecutor may include in a plea agreement is not exhaustive and allows for considerable flexibility." Reporters' Notes (revised, 2004) to Rule 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1431 (LexisNexis 2011-2012). The plain meaning of rule 12 (b) (1) (H) complements the other clauses of rule 12 (b) (1) in a manner that is consistent with the Reporters' Notes. The structure of Mass. R. Crim. P. 12, as appearing in 442 Mass. 1511 (2004), is not closed, as the court reasons, but open. The court's comparison of our rule 12 with Fed. R. Crim. P. 11 is not useful because the two rules are very different. Rule 12 is more expansive than Federal rule 11 in terms of the types of plea agreements that may be used. Reference to Federal rule 11 is useful, however, to the extent it is an acknowledgment by the Federal judiciary that plea agreements may bind a judge, notwithstanding the perception that sentencing is a "quintessential" judicial function.

The type of plea agreement described in rule 12 (b) (1) (B), one containing an agreed recommendation that does *not* bind the judge, requires "specific" language that the joint recommendation is "not" binding on the judge. It follows by necessary implication that a plea agreement with an agreed recommendation that binds a judge, a type permitted under rule 12 (b) (1) (H), does not require specific language to the effect that it is binding on a judge. Of course, consistent with inherent judicial sentencing discretion, a judge can reject a binding plea agreement. What a judge may not do is alter a binding plea agreement without the consent of the parties after it has been accepted. The general understanding and practice of judges, prosecutors, and defense lawyers since rule 12 was adopted in 1979 has been that a plea agreement of the type seen here (without "specific" language stating it does not bind the judge) is binding on a judge if the judge accepts it. Such an agreement is different from the one described in rule 12 (b) (1) (B). This understanding is perfectly consistent with rule 12.

The procedure under rule 12 (b) (1) (H) that I have described does not violate rule 12 (c) (5) or principles of double jeopardy. Rule 12 (c) (5) (C) only requires a judge to proceed with sentencing after accepting the plea. Rule 12 (c) (5) does not prohibit all sentencing considerations before a judge accepts a plea. A judge has discretion to consider such material on the question of the voluntariness of the plea before accepting the plea, especially where a prosecutor has made charge concessions in conjunction with an agreed recommendation. A preliminary sentencing hearing would allow sentencing considerations to be aired fully before a judge accepts a plea. Such a procedure is entirely sensible and not inconsistent with rule 12. Rule 12 (e) already permits a judge to examine a presentence report at the time of "tender of a plea," which includes the plea colloquy. See *Commonwealth* v. *Whitford*, 16 Mass. App. Ct. 448, 453 (1983). A judge can receive all necessary information, then announce whether he will accept the plea agreement with the agreed recommendation and any charge concession. If the judge agrees to be so bound, then he can accept the plea and proceed to sentencing, conformably with rule 12. This procedure is not prohibited by rule 12 or otherwise, and it would avoid any

problem as to double jeopardy.[1] Rule 12 (b) (1) (H) practice, as it existed until today, essentially encompassed Federal practice under Fed. R. Crim. P. 11 (c) (1) (A) and (C), (c) (3) (A), and (c) (5) (A), avoiding the problems created by the needlessly restrictive construction of rule 12 in today's decision.

A parallel procedure exists under G. L. c. 152, § 15, where a Superior Court judge may either approve or disapprove, but may not alter, a settlement agreement in third-party actions arising out of workers' compensation claims. See *Rhode* v. *Beacon Sales Co.*, 416 Mass. 14 (1993). Section 15 requires nothing more specific of an agreement than rule 12 (b) (1) (H), and is thus instructive how best to treat plea agreements in criminal cases where judicial approval is required, where the parties have agreed on the outcome, and where nothing else is said.

The construction the court has given rule 12 encroaches on the principle of separation of powers in art. 30 of the Massachusetts Declaration of Rights in cases where a plea agreement contains an agreed recommendation and a charge concession, but is silent as to whether it is binding on the judge. Until today, such an agreement has been considered a type contemplated by rule 12 (b) (1) (H), and binding if accepted by the judge. As discussed above, this is not the type of plea agreement described in rule 12 (b) (1) (B) because it does not contain the requisite language that it is not binding on the judge. By treating an agreement without the requisite language as a nonbinding agreement, a judge effectively modifies the agreement by inserting the requisite language that makes it nonbinding. This modification is an exercise of executive authority both as to the authority to modify the terms of a plea agreement and the authority to make a charge concession. A judge's exercise of executive authority is not permitted under art. 30. See *Commonwealth* v. *Gordon*, 410 Mass. 498, 500-503 (1991) (judge may not, conformably with art. 30, accept plea to lesser charge without consent of Commonwealth).

Here, because the type of plea agreement presented for the judge's consideration was not the type described in rule

---

[1]Jeopardy attaches to the crime pleaded on acceptance of a guilty plea, and before sentence is imposed. See *Commonwealth* v. *Therrien*, 359 Mass. 500, 503-504 (1971).

12 (b) (1) (B), and if, as the court holds, rule 12 does not contemplate a binding plea agreement, the judge's only option was to reject the agreement outright as one that is not permitted under rule 12. Instead, the judge unilaterally rewrote the agreement to add a term that required the prosecutor's consent. This had the further effect of authorizing a charge concession that also required the prosecutor's consent, and which the prosecutor had authorized on condition that the judge impose the agreed-on sentence.

Rule 12 will now permit judges impermissibly to exercise executive authority in another way. Rule 12 (b) (1) (A) invites prosecutors to make charge concessions that bind the Commonwealth in plea agreements, presumably as consideration for something agreed to by the defendant, and also to assist in the speedy resolution of criminal cases. The rule is designed to optimize the benefits of plea bargaining for the judicial system. The rule makes the judicial system a direct beneficiary of plea agreements. In this case the Commonwealth bound itself to a charge concession as consideration for the defendant's agreement that he receive a specific sentence. The agreement was contingent on the judge's acceptance of the plea agreement. After inviting charge concessions as consideration for a plea agreement, and after the Commonwealth acted accordingly and agreed to be bound to its charge concession, the court turns its eyes away from rule 12 (b) (1) (A) and says essentially that the Commonwealth relinquishes nothing where a defendant offers to plead guilty to a lesser charge on an agreed recommendation pursuant to the terms of a plea agreement. See *Commonwealth* v. *Dean-Ganek, post* 305, 309 (2012). The court says that rule 12 was never intended to require judges to honor terms of a plea agreement that protect the Commonwealth's interest, only a defendant's interest. *Ante* at 259. The court reasons that a judge cannot be bound by the terms of a plea agreement (notwithstanding the judge's ability to avoid being bound if he or she rejects in advance the plea agreement and the plea tender) because that would interfere with a "quintessential[ly]" judicial function, namely, sentencing. *Ante* at 264. The "quintessential[ly]" executive function of charging crimes is no less deserving of recognition. Yet the court disregards the Commonwealth's

agreement to be bound in exchange for a specific sentence. This construction of rule 12 allows a judge, practically speaking, to effectuate a waiver of consideration obtained by the prosecutor in exchange for the invited and agreed-on charge concession. That waiver is the judicial exercise of executive authority, which violates art. 30 of the Massachusetts Declaration of Rights.

It is precisely because of the charge concession that a prosecutor most often will insist on a binding agreement, and why binding plea agreements are essential. They protect the legitimate interests of the Commonwealth. It is unreasonable for a court rule to invite prosecutors to exercise their constitutional responsibility by entering into plea agreements containing agreed recommendations and charge concessions yet then authorize judges to render the prosecutors' exercise of that authority meaningless by disregarding charge concessions as consideration for those plea agreements. It is illogical for a court rule to be construed in such a fashion. It makes such agreements illusory from the perspective of the Commonwealth because it effectively induces officers of a coordinate branch of government to exercise their authority for the benefit of a defendant, but it deprives the people of the Commonwealth of the benefit of the exercise of that authority as manifested in the plea agreement negotiated on their behalf. See *Commonwealth* v. *Gordon, supra* at 501 ("The judge's action . . . silenc[ed] the people's elected voice"). The court construes rule 12 in a way that thoroughly negates the exercise of executive authority. The resulting agreement is no agreement at all, but a lopsided exercise that makes prosecutors appear to be fools for having "given away the store" and received nothing in return. The court's exercise of executive authority through the use of an extreme case management technique that rewrites plea agreements violates art. 30. Instead of embracing an interpretation of rule 12 that provides reasonable accommodation to both the judicial and the executive branches of our State government in this delicate situation, the court has chosen an interpretation that is out of balance and that undermines public confidence in both branches.

The court intimates that because the Commonwealth had reduced the charge of trafficking before the plea agreement was entered into, the Commonwealth "obtained what it bargained for" and the defendant was entitled to plead guilty as charged

without a plea agreement. *Ante* at 264. The court discussed this point explicitly in *Commonwealth* v. *Dean-Ganek, post* 305, 309 (2012). This is an unlikely scenario. First, a defendant does not have an absolute right to have his guilty plea accepted. See *Santobello* v. *New York,* 404 U.S. 257, 262 (1971). Second, the prosecutor must be present to give a recitation of facts that would be offered by the Commonwealth to support a conviction, or present witnesses to that end. See Mass. R. Crim. P. 12 (c) (5) (A). See also Reporters' Notes (revised, 2004) to Rule 12, Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1438-1439 (LexisNexis 2011-2012). Third, until today, the vast majority of judges would not have allowed this to happen without first giving the prosecutor at least one opportunity to seek an indictment. On the chance that a judge might be unaccommodating, a prosecutor could nol pros the complaint and seek an indictment on short order.[2]

Here, the judge reasoned that, had the Commonwealth "implore[d]" him for time to seek an indictment, the Commonwealth likely would not have prevailed "because so much time had passed without an indictment." This was neither sensible, constitutionally acceptable, nor fairly reflective of what occurred. The defendant had been arraigned on June 5, 2009, and the complaint had been amended on August 3. The parties entered into plea negotiations in September, reasonably soon after the drug analysis was received, and reached an agreement in approximately six weeks. The case had been scheduled for hearings on pretrial motions on October 23. Based on the plea agreement that had been reached the case was brought forward on October 22 and scheduled for disposition on November 19. There is no indication of sloth or dilatory tactics by the prosecutor. The prosecutor agreed to refrain from indicting the defendant on a trafficking charge if the defendant agreed to the joint recommendation in question. The plea agreement was enforceable by the Commonwealth, see *Commonwealth* v. *Pelletier,* 62 Mass. App. Ct. 145, 147 (2004), to the extent the prosecutor could have prevented the defendant from attempting to plead guilty without

---

[2]However, as occurred here, a judge could impose an agreed-on sentence and then, sua sponte, revise and revoke the sentence, leaving a prosecutor with no chance to nol pros the case. Here, the judge did not even bother to address the Commonwealth's motion to reconsider.

first honoring the plea agreement. The prosecutor lived up to the terms of the plea agreement by not indicting the defendant in exchange for the defendant's agreement to a joint sentencing recommendation. The judge was made aware of the charge concession. Had the judge rejected the plea agreement and given the prosecutor a reasonable amount of time to obtain an indictment, the prosecutor could have sought an indictment against the defendant for drug trafficking.

Although the court says the "judge did not deny the prosecutor the opportunity to indict or reduce the criminal charges brought by the district attorney," *ante* at 264, that is exactly what happened. Saying it did not happen does not make it so. If plea bargaining were likened to a game (which it is not), the court's construction of rule 12 effectively prevents prosecutors who decide to play the game with a charge concession and an agreed recommendation from ever getting the ball. The court also says that "the Commonwealth obtained what it bargained for: the defendant pleaded guilty and agreed to the prosecutor's recommendation." *Ante* at 264. That is not all the Commonwealth bargained for. Having been invited by rule 12 (b) (1) (A) to include a charge concession in the plea agreement, the Commonwealth also bargained for advance notice of the judge's intention either to accept the agreed recommendation as consideration for the charge concession or to reject the agreement and the attendant plea if the judge intended to go below the agreed recommendation.

Today's decision amounts to nothing more than the ambush of a prosecutor who, based on long-standing practice under rule 12 (b) (1) (H), negotiated in good faith a plea agreement with an agreed recommendation and a charge concession; who in good faith reasonably expected a judge to tell him if the negotiated plea agreement would not be accepted; and who in good faith reasonably expected the judge to give him reasonable time to exercise his quintessential executive prerogative to bring maximum criminal charges if the plea agreement were not accepted. The prosecutor's charge concession was conditioned on a specific sentence and acceptance of the plea agreement, but the judge denied both the prosecutor and the public the benefits of that agreement by usurping executive authority to rewrite the agreement.

Even if the judge's actions did not violate art. 30, they were entirely inappropriate and at least were an abuse of discretion. In *Commonwealth* v. *Lowder*, 432 Mass. 92 (2000), we joined the " 'overwhelming majority' of courts [that] have held that motions to acquit a defendant made after an opening statement 'should be denied unless it clearly appears from the opening statement that the defendant cannot be lawfully convicted and then only after the prosecutor has been made aware of the difficulty and fails or is otherwise unable to correct it.' " *Id.* at 100-101, quoting *People* v. *Kurtz*, 51 N.Y.2d 380, 385 (1980), cert. denied, 451 U.S. 911 (1981). Although we said there was no art. 30 violation because the judge disposed of the case on a legal basis during trial, we emphasized that a judge's ability pretrial to dispose of a case is more limited. *Commonwealth* v. *Lowder*, *supra* at 100. See *Commonwealth* v. *Gordon*, 410 Mass. 498, 502-503 (1991). We added that unless an early acquittal based on a prosecutor's opening is clearly compelled by law, failure to give the Commonwealth the opportunity to correct the difficulty is an abuse of discretion because it does "violence to the weighty public interest in ensuring that wrongdoers are convicted of the crimes that they commit." *Commonwealth* v. *Lowder*, *supra* at 101. The reasoning in the *Lowder* case should provide guidance in this case apart from the question whether what occurred here violated art. 30. There simply is no legitimate reason to deny accommodation to the executive branch of government solely because a plea concession materialized before a change of plea instead of after a change of plea. And there is no legitimate reason to deny accommodation to the executive branch as to the broader holding of the court's decision, which I will address shortly.

The prosecutor relied on the perfectly sensible expectation that the judge would have announced in advance that he would not accept the plea agreement and that he would give the Commonwealth a reasonable opportunity to seek an indictment. Today's decision communicates to prosecutors (and the public) that the Commonwealth will not receive equal treatment in *any* type of plea agreement.[3] It resonates with all the overtones of a contract of adhesion for which the court recognizes no remedy.

---

[3]The court states: "In short, rule 12 protects a defendant from the risk that

Prosecutors are forewarned that if they want to protect their executive prerogative to charge defendants and negotiate plea agreements, they had better secure the maximum charge, by indictment if necessary, as soon as possible and before they enter into plea negotiations. They also should keep a supply of nolle prosequi forms in close reach, and decline to engage in plea negotiations in the most serious cases if a charge concession is involved.

What is especially problematic in the court's decision lies beyond the facts of this case. The prosecutor's decision to refrain from obtaining an indictment figures prominently in the court's decision. However, that fact cloaks the real devil in the decision. The broad holding of today's decision is that even if there were an indictment, a judge need not honor the Commonwealth's position in any plea agreement that contains either an agreed recommendation or a charge concession, or both. Stated otherwise, no plea agreement under rule 12 can ever bind a judge. By way of illustration, if a prosecutor agrees to allow a defendant charged with murder to plead guilty to so much of the indictment as alleges manslaughter in exchange for an agreed recommendation of a ten- to twelve-year prison sentence, the judge can accept the recommendation and the plea agreement, accept a plea to manslaughter, then sentence the defendant to one year (or less) in a house of correction. Such a result is absurd, and it undermines our constitutional form of government. It is not the way plea agreements with charge concessions and agreed recommendations have been viewed since the rules of criminal procedure were adopted in 1979, and it likely is not the understanding of the Justices who first adopted rule 12.

Normally, we apply a rule of construction that construes an enactment in harmony with related laws, whenever possible. See, e.g., *Charland* v. *Muzi Motors, Inc.,* 417 Mass. 580, 583 (1994). We also normally apply a rule of construction that seeks, whenever possible, to avoid absurd results that flow from the literal interpretation of an enactment. See *Champigny* v. *Commonwealth,* 422 Mass. 249, 251 (1996). However, today's decision makes no

---

the judge will exceed the prosecutor's recommendation, but it does not protect the Commonwealth from the risk that the judge will impose a sentence below the prosecutor's recommendation." *Ante* at 258-259.

use of those rules and instead construes rule 12 in a way that confronts with unnecessary dissonance the duty conferred by the people onto a coordinate branch of government, and it produces an absurd result. It challenges the wisdom expressed by Justice Cardozo in *Snyder* v. *Massachusetts*, 291 U.S. 97, 122 (1934), where he said, "[J]ustice, though due the accused, is due to the accuser also. . . . We are to keep the balance true."

Any prosecutor who hereafter makes a charge concession in conjunction with an agreed recommendation does so with full knowledge that under rule 12 judges need not recognize such an agreement as binding. Any promise to reduce the charges will indeed bind the prosecutor, but nothing prevents a judge from undercutting the agreed recommendation. The practical effect of today's decision will be to put pressure on prosecutors to try serious cases, and even cases that are less serious, which well could have been resolved by a plea agreement with an agreed recommendation and a charge concession. The construction the court has given to rule 12 is unnecessary and unwise, and it will strain already limited resources of courts, prosecutors, and defense counsel in difficult economic times to maximize public protection. See *Commonwealth* v. *Gordon*, *supra* at 500. Plea negotiations have been an essential part of the criminal justice process. They enhance judicial economy, conserve the resources of the Commonwealth, and serve the ends of justice for the defendant, the victim, and society at large. See *Santobello* v. *New York*, 404 U.S. 257, 260-261 (1971). Notwithstanding the court's out-of-hand dismissal of likely consequences, today's decision calls into question the utility of agreed recommendations and especially charge concessions in plea agreements.

Remarkably, the defendant did not file a motion to vacate his guilty plea. We can infer from this that he was satisfied with the performance of his attorney, and that he had no difficulty accepting the justice of the agreement that had been struck. This speaks volumes. A judge should be circumspect about rejecting a binding plea agreement with an agreed recommendation. There is much that a judge does not know, and probably never will know, about the strengths and weaknesses of a particular criminal case. Defense counsel is in the best position to assess his or her client's case, after having reviewed the discovery materials,

interviewed the defendant and the witnesses, and evaluated the impression they likely would have on the fact finder and the damaging impact that certain evidence would have on the outcome if the case were tried.

The court finds fault with the performance of both defense counsel and the prosecutor, but the judge contributed to whatever confusion existed. At the rule 29 hearing the judge indicated that at the time of the plea he believed the defendant could have been indicted for trafficking in a class A controlled substance, which, based on the weight of the sample, carried a five-year mandatory minimum penalty. See G. L. c. 94C, § 32E (c) (1). Because the substance the defendant was charged with trafficking, oxycodone, actually is a class B controlled substance, the judge believed the defendant did not receive as much of a benefit from the agreed recommendation as he originally understood. This is because the judge believed that trafficking in any class B controlled substance, based on the weight of the defendant's sample, carried only a three-year mandatory minimum sentence. For this reason the judge, sua sponte, reduced the defendant's sentence pursuant to rule 29. However, oxycodone is an opium derivative that, while in class B of G. L. c. 94C, § 31, for purposes of punishment for trafficking is grouped with all opiates and class A controlled substances.[4] Trafficking in oxycodone, from at least fourteen but less than twenty-eight grams, does indeed carry a mandatory minimum five-year prison sentence. See G. L. c. 94C, § 32E (c) (1). In essence, the judge's original understanding of the maximum punishment the defendant was facing was correct. Therefore, his reason for reducing the defendant's sentence pursuant to rule 29 was faulty. The performances of all involved here leave much to be desired. Nevertheless, the defendant understood the essential components of the case and the plea agreement, and he never sought to undo what occurred by filing a motion to vacate his guilty plea.

For the foregoing reasons I respectfully dissent. I would conclude that because the judge was without authority to alter the agreed-on sentence upon acceptance of the defendant's guilty

---

[4]Some opium derivatives are class A controlled substances. See G. L. c. 94C, § 31 (a), (b). Others, including opium, are class B controlled substances. See G. L. c. 94C, § 31 (a), (b).

plea, he could not subsequently alter the agreed-on sentence pursuant to rule 29. A judge may only impose a sentence under rule 29 that he could have imposed at the time of sentencing. Because the judge here was bound to impose the agreed-on sentence when he accepted the defendant's guilty plea, he was similarly bound when revisiting the sentence under rule 29. I believe the Commonwealth is entitled to imposition of the sentence set forth in the plea agreement. See *Commonwealth* v. *Pelletier*, 62 Mass. App. Ct. 145, 147 (2004). I would vacate the revised sentence and order the original sentence reinstated.