NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-366

COMMONWEALTH

vs.

ALEXIS FELICIANO.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Alexis Feliciano, appeals from the sentence imposed upon the violation and revocation of his probation, arguing that the sentence was illegally based on a conviction for which he had already served his sentence and on the judge's personal and private beliefs. We affirm.

Background. In 2014 the defendant attacked his ex-girlfriend, strangling her with an electrical cord, brandishing a knife, and threatening to kill her and their children, then himself, if she refused to resume their relationship. He pleaded guilty to six indictments charging the following crimes: attempted murder, in violation of G. L. c. 265, § 16 (count one); home invasion, in violation of G. L. c. 265, § 18C (count

two); assault and battery by means of a dangerous weapon (ABDW), with a knife, in violation of G. L. c. 265, § 15A (b) (count three); ABDW, with a knife (count four); ABDW, with an extension cord (count five); and assault and battery, in violation of G. L. c. 265, § 13A (count six). On the lead charge, attempted murder, he was sentenced to a State prison term of ten to twelve years. He was also sentenced to a State prison term of four and one-half to five years on count three, a two and one-half year house of correction sentence on count six, and a twelve-year term of probation on count four, all to run concurrently with his sentence on count one. With respect to counts two and five, the defendant was sentenced to concurrent probationary terms of five years, to commence from and after the completion of his sentence on count one.

The defendant was released from prison in March 2023 and began serving the probationary terms imposed on counts two and five, along with the remainder of his term of probation on count four. In January 2024, the probation department issued a probation violation notice, alleging the defendant had incurred new criminal charges of threatening to commit a crime, in violation of G. L. c. 275, § 2, and making annoying electronic communications, in violation of G. L. c. 269, § 14A. The defendant's ex-girlfriend was the victim of both these crimes.

2

The notice was amended approximately one month later to include an allegation that the defendant had failed to comply with recommended mental health treatment, a condition of his probation.

A Superior Court judge, who was not the original plea judge, found the defendant had violated the terms of probation, a determination that the defendant does not challenge on appeal. At the sentencing hearing two weeks later, the judge said he was "totally shocked" by the facts of the defendant's case. Noting that "[t]he lower end of the guidelines on count five is [sixty] months," the judge sentenced the defendant to a State prison term of five years to five years and one day on count five, plus concurrent three-year terms of probation on counts two and four, from and after the sentence on count five. This was the sentence that the probation department had recommended.

The defendant filed motions to revise or revoke his sentence under Mass. R. Crim. P. 29 (a) (1), as appearing in 489 Mass. 1503 (2022), and to correct an illegal sentence under Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001). The judge denied both motions. The defendant was permitted to file a late notice of appeal.

Discussion. The defendant requests that we vacate his sentence and remand the matter for resentencing before a

3

different judge.  "It is not the function of an appellate court to review an otherwise lawful sentence which is within the limits set by the statute."  Commonwealth v. Bibby, 35 Mass. App. Ct. 938, 941 (1993).  However, an appellate court "may review the penalty imposed upon a defendant who has been sentenced for a crime other than that for which he stands convicted."  Commonwealth v. Coleman, 390 Mass. 797, 804 (1984). We may also review whether a sentencing judge has permitted personal or private beliefs "to transform the judicial role from impartial arbiter to advocate for the Commonwealth or any party," Commonwealth v. White, 48 Mass. App. Ct. 658, 664 (2000), and to determine if "[t]he appearance and interests of justice will be better served by resentencing."  Commonwealth v. Lebron, 23 Mass. App. Ct. 970, 972 (1987).

1.  Double jeopardy.  The defendant argues the judge's comments about the underlying crime and the sentencing guidelines suggest that the judge based the defendant's sentence on conduct relevant to count one, the attempted murder charge, for which the defendant had already served his sentence. Accordingly, he argues, his new sentence violated principles of double jeopardy.  "The double jeopardy clause, which protects a defendant against multiple punishments for the same offense, . . . represents a constitutional policy of finality for the

4

defendant's benefit in criminal proceedings" (quotations and citations omitted).  Commonwealth v. Scott, 86 Mass. App. Ct. 812, 813-814 (2015).  In short, "[o]nce a defendant has served fully the proper sentence prescribed by law for the offense committed, the State may not punish him again."  Aldoupolis v. Commonwealth, 386 Mass. 260, 272, cert. denied, 459 U.S. 864 (1982).

"Few, perhaps no, judicial responsibilities are more difficult than sentencing.  The task is usually undertaken by trial judges who seek with diligence and professionalism to take account of the human existence of the offender and the just demands of a wronged society."  Graham v. Florida, 560 U.S. 48, 77 (2010).  In part because we presume sentencing judges will exercise such care and follow the law, "[a] sentencing judge is given great discretion in determining a proper sentence." Commonwealth v. Lykus, 406 Mass. 135, 145 (1989).  "In exercising this discretion to determine a just sentence, a judge must weigh various, often competing, considerations," particularly the circumstances and severity of the crime, the defendant's criminal history, and the impact of the crime on the victim.  Commonwealth v. Rodriguez, 461 Mass. 256, 259 (2012). The judge properly considered the violent nature of the defendant's underlying crime in calculating a just sentence.  We

are not persuaded that the judge had the attempted murder charge in mind when sentencing the defendant, as the ABDW charge and the attempted murder charge were based on the same conduct.[1]

Nor does the judge's comment regarding the sentencing guidelines convince us that he based his sentencing decision on the defendant's attempted murder charge.  The defendant argues that the judge's calculation of a minimum sentence of sixty months must have been based on the guidelines for attempted murder, not ABDW; however, the judge could have reached this number in a variety of ways, considering the defendant's criminal history and the seriousness of the injury to the victim.  Furthermore, the sentencing guidelines for attempted murder supported a minimum sentence of eighty-four months, when taking into account the defendant's criminal record.  In any case, even if the judge read the chart incorrectly, we decline to speculate that he sentenced the defendant for the wrong

---

[1] This commonality raises no double jeopardy issue.  "A defendant may be convicted of two statutory offenses arising from a single criminal episode if each crime, as in this case, requires proof of an additional fact that the other does not" (quotation and citation omitted).  Commonwealth v. Oliveira, 53 Mass. App. Ct. 480, 483 (2002).  ABDW does not require proof of "the specific intent to kill," as does attempted murder, Commonwealth v. Murray, 51 Mass. App. Ct. 57, 61 (2001), and attempted murder by strangulation does not require proof that the defendant used a dangerous weapon, see Commonwealth v. Dixon, 34 Mass. App. Ct. 653, 657 (1993).  They are not the same offense for double jeopardy purposes.

charge -- the judge specifically referred to "[t]he lower end of the guidelines on count five" (emphasis added), and mentioned "count five" twice more in imposing the sentence. Because the sentencing guidelines are advisory, not mandatory, Commonwealth v. Russo, 421 Mass. 317, 322-323 (1995), and because the defendant's sentence is less than the ten-year maximum penalty imposed by statute, see G. L. c. 265, § 15A (b), a slip of the tongue or minor mathematical error does not warrant resentencing.

Finally, the defendant argues that the sentence violates principles of double jeopardy because it requires him to serve more time than contemplated by the original sentencing scheme. The "expectation of finality" protected by the double jeopardy clause does not operate at the level of the individual sentence, but with regard to "the entirety of the scheme." Commonwealth v. Leggett, 82 Mass. App. Ct. 730, 736-737 (2012). A judge who revokes a defendant's probation cannot order that the defendant serve beyond the maximum punishment contemplated by the original sentencing scheme, because such an order would functionally "require[] him to serve multiple punishments for the same offense." Commonwealth v. Bruzzese, 437 Mass. 606, 614 (2002) (where defendant was sentenced to four equal concurrent terms of

7

two and one-half years, judge may not order defendant to serve additional year on one complaint).

In this case, however, the judge did not impermissibly alter the original sentencing scheme. See Bruzzese, 437 Mass. at 614. A term of straight probation "by its nature lacks an element of finality. There is an aspect of continuing, not double, jeopardy." McHoul v. Commonwealth, 365 Mass. 465, 469 (1974). In other words, "a period of straight probation is simply the deferral of a sentencing decision." Commonwealth v. Rodriguez, 52 Mass. App. Ct. 572, 577 (2001).

> "If a defendant's straight probation is revoked, whether it be on a single charge or on multiple charges, he is subject to sentencing on those charges in essentially the same light that existed at the time straight probation was originally imposed. . . . He may receive the maximum sentence on each conviction, and the sentences may be imposed consecutively, just as at the original sentencing" (citations omitted).

Bruzzese, supra at 617-618. Under the defendant's original sentencing scheme, revocation of probation on count five would necessarily result in an additional term of incarceration after the ten to twelve year term of incarceration on count one. The new sentence is compatible with the overall sentencing scheme and does not violate the principles of double jeopardy.

2. Sentence based on judge's personal or private beliefs. The defendant argues the judge's comments immediately before imposing his sentence suggest that the judge inappropriately

8

based the sentence on his personal or private beliefs about violence in the community, rather than on the facts or law pertinent to the defendant's circumstances.[2]  "A trial judge must be ever vigilant to make certain that his personal and private beliefs do not interfere with his judicial role and transform it from that of impartial arbiter."  Commonwealth v. Mills, 436 Mass. 387, 401 (2002).  To allow or appear to allow as much "disserves the entire judicial enterprise" and requires resentencing.  White, 48 Mass. App. Ct. at 664.  However, a judge is permitted -- even encouraged -- to specify "his sentencing philosophy and particularized sentencing rationale."  Id.

The record does not support the defendant's argument that the judge allowed his personal or private biases to influence his sentencing decision.  First, we do not agree that the judge was referring to his idiosyncratic, personal concerns about violence in the community.  The judge was referring to the violence he, as a judge, sees in the course of his official

---

[2] The judge's comments, in full, were as follows:  "There's a lot of years on this job now.  It takes a lot to be shocked. And sometimes that worries me that we see so much violence.  I put it off for two weeks, because it shocked me.  It just totally shocked me what happened in this particular case."

duties on the bench.[3]  His remarks highlighted the brutality of the defendant's underlying crime, severe enough to shock even the judge, for whom grappling with violence is "part of the job."  As already noted, sentencing judges must consider the severity of the underlying crime.  See Rodriguez, 461 Mass. at 259.  Even if the judge was referring to the amount of violence in the community, this consideration would also be a permissible element of a sentencing decision.  A sentencing judge properly may take into account the need for general deterrence, that is, "deterring others from committing comparable crimes."  Id. Accordingly, the sentence was informed by appropriate factors,

---

[3]  Indeed, we commend the judge for postponing sentencing for two weeks to ensure that he based his decision on the facts of the case rather than on emotion.

10

and the judge's comments do not require resentencing.

<u>Order revoking probation and
imposing sentence affirmed</u>.

<u>Orders denying motions to
reconsider and to revise
and revoke sentence
affirmed</u>.

By the Court (Meade,
Massing & Brennan, JJ.[4]),

Clerk

Entered:  February 6, 2026.

---

[4] The panelists are listed in order of seniority.

11