## COMMONWEALTH vs. ROY L. TATE, JR.

No. 92-P-691.

Suffolk. December 17, 1992. - May 5, 1993.

Present: KASS, JACOBS, & GREENBERG, JJ.

*Practice, Criminal,* Probation. *Constitutional Law,* Separation of powers. *Due Process of Law,* Probation revocation. *District Attorney.*

The role played by an assistant district attorney at a probation revocation hearing during which she examined and cross-examined witnesses, in effect presenting evidence in support of a position that the probation department had decided upon, was not an intrusion by the executive branch of government upon the functioning of the judicial branch, so as to violate art. 30 of the Massachusetts Declaration of Rights. [447-449]

At a probation revocation hearing, there was sufficient evidence to warrant the judge's conclusion that the defendant had violated the condition of his probation that he have no contact of any kind with the woman he had been convicted of raping and assaulting. [449-450]

At a probation revocation hearing, the judge properly exercised his discretion in revoking the probation of a defendant who had violated the condition of his probation that he have no contact of any kind with the woman he had been convicted of raping and assaulting, where there was a reasonable basis for the revocation and the judge had given conscientious thought to what was to be done. [450-451]

INDICTMENTS found and returned in the Superior Court Department on January 14, 1988.

A proceeding for revocation of probation was heard by *Daniel A. Ford,* J.

*Nancy A. Dolberg* for the defendant.

*Roger L. Michel, Jr.,* Assistant District Attorney, for the Commonwealth.

KASS, J. When the defendant Roy L. Tate, Jr., was released from State prison on probation,[1] it was a condition of

---

[1]The defendant had been sentenced, on August 1, 1988, to serve concurrent terms of ten to twelve years at M.C.I., Cedar Junction. On the basis of an understanding with the sentencing judge, the defendant filed a mo-

his probation that he have no contact of any kind with Joyce Harris or any member of her family. Tate had been serving concurrent sentences for, among other offenses, the aggravated rape of Harris and, on the same occasion, perpetrating upon her an assault and battery with intent to kill (he had stabbed her in the chest, puncturing one of her lungs). For violation of the "absolutely no contact" condition, a judge of the Superior Court ordered the revocation of Tate's probation. From that order Tate has appealed. There are three claims of error.

1. *Constitutionality of an assistant district attorney's participation at the surrender hearing.* The defendant makes the inventive, but ultimately insubstantial, argument that the role played by an assistant district attorney at the probation revocation hearing (she examined and cross-examined witnesses) trespassed upon the separation of governmental powers prescribed by art. 30 of the Declaration of Rights of the Massachusetts Constitution.[2] Probation functions are within the judicial branch, *Massachusetts Probation Assn.* v. *Commissioner of Admn.*, 370 Mass. 651, 657 (1976), and the office of district attorney is considered as within the executive

---

tion to revise and revoke the sentence. In a sentencing memorandum dated November 22, 1988, the judge said he would retain jurisdiction over the motion to revise and revoke and further declared his intention to revise Tate's sentence if arrangements could be made to have Tate enter an inpatient substance abuse facility after he had served a total commitment of three years. If that could be done, the judge declared his further intent to suspend the balance of Tate's sentence and place him on probation. On October 24, 1990, i.e., a little more than two years later, the judge revised Tate's sentence to time served, balance suspended for a period of five years. Compare the procedure disapproved in *Clark, petitioner, ante* 191 (1993).

[2]Article 30 provides: "In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

On the first occasion when Edward Duggan, who presented the case for the probation service, ceded examination of a witness to Ms. Leslie O'Brien, an assistant district attorney, counsel for Tate objected on the basis of art. 30.

branch, *Burlington* v. *District Attorney for the N. Dist.*, 381 Mass. 717, 721 (1980).

That separateness does not, however, lead to the conclusion that a district attorney's office may not assist the probation service in presenting evidence in support of a position that the probation service has decided upon. The compartments are not watertight: "[A]bsolute division of the three general types of functions is neither possible nor always desirable," *Opinion of the Justices*, 365 Mass. 639, 641 (1974); and there is a difference between assisting and intruding. If the coordinated activity of branches of government is voluntary and the activity of one branch does not intrude into the internal function of another, the strictures of art. 30 are not violated. *Clerk of the Superior Court for the County of Middlesex* v. *Treasurer & Recr. Gen.*, 386 Mass. 517, 525 (1982). Here the probation officer expressly asked the court's permission to "yield" the questioning of witnesses to the assistant district attorney. When it came to stating the position of the probation service, the probation officer spoke. He made the opening statement and the closing argument at the revocation hearings.

At revocation hearings witnesses are examined and cross-examined. Evidence of a nontestimonial nature may be received. Although such proceedings are not subject to the strict evidentiary discipline of a trial, see *Commonwealth* v. *Durling*, 407 Mass. 108, 114 (1990), they proceed along judicially drawn lines and are subject to judicial review. *Id.* at 113. *Commonwealth* v. *Maggio*, 414 Mass. 193, 196-199 (1993). In following those lines, probation officers are only aided, not interfered with, when district attorneys, upon invitation, conduct examinations of witnesses and present evidence. Cf. *Commonwealth* v. *Favulli*, 352 Mass. 95, 101 (1967). There are some tasks, and these are among them, for which lawyers are, indeed, particularly trained. What disposition was to be made of Tate's case was left, in the first instance, with the probation officer and, ultimately, the judge. Contrast, e.g., *Commonwealth* v. *Gordon*, 410 Mass. 498, 499-501 (1991), in which a judge usurped executive

power by accepting a plea of second-degree murder, over the objection of the district attorney, to an indictment for first-degree murder.

2. *Whether the defendant violated the terms of his probation.* Upon his release from prison, Tate entered a halfway house on Dimock Street in the Dorchester section of Boston. While there he achieved 150 consecutive days of sobriety. He began to be active in a neighborhood church and made progress in a job training program. As to the positive conditions of his probation, Tate was doing more than ordinarily well.

As to the negative condition, to have no contact of any kind with the victim (Harris) or any member of her family, Tate enjoyed less success. On March 27, 1991, five months after leaving prison, Tate approached Joyce Harris. She was then a bus driver, and the encounter — Tate insisted it was accidental — took place at the Dudley Street T[3] station. Tate walked up to Harris and said, "Hello." She turned away and Tate then walked away, but he returned and asked to speak to Harris. She again refused to speak with Tate and told him to leave her alone, whereupon he again walked away. Although a light contact, it was enough to cause Harris to call Tate's probation officer and the victim witness advocate at the district attorney's office. Harris, as she was to testify at the revocaton hearing, was deeply frightened.

Two days later, while walking with her children on Rockland Street, which is about a ten-minute walk from where Tate lived on Dimock Street, Harris noticed Tate looking at her from "the top of the street" while she was "towards the bottom." Harris reported the encounter, such as it was, to the probation officer and the victim witness advocate.

For each encounter there were innocent explanations: accident, coincidence, nonhostile intent, a desire to make amends, or a desire to look at the son whom he had fathered by Harris. The judge was not required, however, to accept any of the exculpatory reasons offered by the defendant. The question is whether the record discloses evidence sufficient to

---

[3]Massachusetts Bay Transportation Authority.

warrant the finding by the judge that Tate had violated the no-contact condition of his probation. See *Commonwealth* v. *Durling*, 407 Mass. at 112; *Commonwealth* v. *Maggio*, 414 Mass. at 198. The defense on appeal concedes, properly, that the Dudley Street station encounter was a violation of probation because the defendant twice spoke to the woman with whom he was to avoid all contact. The defense attacks as erroneous, however, the finding of a second contact, reasoning that the judge might have come to a different ultimate finding and a different disposition but for his findings of two contacts in violation of the probation conditions. We are of opinion that the conceded contact at the Dudley Street station was sufficient to support the ultimate finding of breach of probation conditions and the revocation of Tate's probation. We think also that the judge, in the circumstances, could find that the encounter on Rockland Street had been contrived by the defendant. Tate's probation officer had repeatedly reminded him of the importance of the no-contact order and its absolute nature. Tate knew where Harris lived. The judge could find that Tate's presence on the street where she lived was not coincidental and could disbelieve the reason offered by Tate for being in the area. We do not disturb the findings of fact of the Superior Court judge absent clear error, *Commonwealth* v. *Moon*, 380 Mass. 751, 756 (1980), and cases cited, and here there was none. The evidence did not compel the judge's findings, but it warranted them.

3. *Validity of revocation order.* In relation to the slight quality of the contacts, the defendant argues, the penalty of revocation of probation and a return to State prison to serve the balance of a substantial sentence is so disproportionate as to be arbitrary and capricious. Yet the record discloses that, in his consideration of whether to revoke probation, the judge was deliberate, patient, and obviously troubled. Tate's family proposed sending him to serve his probation in California under the supervision of designated cousins and local probation authorities. The judge gave that proposal serious consideration and allowed time for seeing to details and buying a one-way airplane ticket for Tate. Ultimately, upon reflection,

the judge decided against the California option and revoked probation. The judge seemed particularly troubled by a record of a sexual assault by Tate prior to that on Harris. Tate's case is unlike *United States* v. *Reed*, 573 F.2d 1020, 1024-1025 (8th Cir. 1978), on which he relies, and in which the District Court judge, unlike the judge in the instant case, had not appeared to weigh the significance of the probation violation of the defendant against his considerable progress.

Revoking probation is a decision within the sound discretion of the judge in the trial court. *McHoul* v. *Commonwealth*, 365 Mass. 465, 469-470 (1974). *Commonwealth* v. *Durling*, 407 Mass. at 111. It goes without saying that the probationer and society benefit when he is rehabilitated. See *Commonwealth* v. *Durling, supra* at 116. Yet conduct which constitutes a violation of probation may form the basis of a revocation order. *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976). Tate had been granted probation on the express condition that he have *no* contact of *any* kind with either Harris or her family. The responsibility for adhering to that condition was his. He was not able so to do. The judge could, in the exercise of his discretion, consider that want of self-control had been a factor in the grave and horrifying crime Tate had committed. While the decision to revoke probation was not an inevitable one, there was a reasonable basis for it and, as we have observed, the judge gave conscientious thought to what was to be done.

*Order revoking probation affirmed.*