## Commonwealth *vs.* Keith R. Doucette.

No. 11-P-1311.

Worcester. February 6, 2012. - May 16, 2012.

Present: Sikora, Carhart, & Sullivan, JJ.

*Practice, Criminal,* Revocation of probation, Sentence, Plea.

A criminal defendant challenging the revocation of his probation and the propriety of the resulting sentence failed to demonstrate that the judge, in denying the defendant's motion to vacate sentence or for new trial, improperly relied on post-plea matters that pertained to victims of crimes of which the defendant had already been convicted and for which the defendant had completed his term of incarceration [742-743]; further, there was no merit to the defendant's claims that the judge impermissibly punished him for the probation violation itself [743-744] or that the judge could consider only the defendant's conduct as of the date of the original sentencing hearing and nothing thereafter [744-745].

The circumstances of a prosecutor's involvement in probation revocation proceedings did not usurp the function of the probation department in violation of art. 30 of the Massachusetts Declaration of Rights. [746]

A criminal defendant failed to demonstrate that his plea of guilty to a charge of manslaughter was not knowing and voluntary. [746-747]

INDICTMENTS found and returned in the Superior Court Department on March 6, 1998.

A motion to vacate sentence or for a new trial, filed on October 14, 2010, was heard by *John S. McCann*, J.

*Sean J. Gallagher* for the defendant.

*Jane A. Sullivan*, Assistant District Attorney, for the Commonwealth.

SULLIVAN, J. The defendant appeals from the denial of his motion to vacate sentence or for new trial, challenging the revocation of his probation and the propriety of his sentence and, alternatively, seeking to set aside his guilty plea. We review these

claims for a substantial risk of a miscarriage of justice.[1] See *Commonwealth* v. *Randolph*, 438 Mass. 290, 294-295 (2002). Finding none, we affirm.

*Background.* The facts of this case have been set forth in detail previously, see note 1, *supra*, and are briefly summarized here to the extent relevant to this appeal. The defendant pleaded guilty in 1998 to one count of manslaughter (G. L. c. 265, § 13) and three counts of causing serious bodily injury by operation of a motor vehicle while under the influence of intoxicating liquor (G. L. c. 90, § 24L[1]). The convictions were the result of a head-on collision that occurred when the defendant, while impaired, speeding, and on the wrong side of the road, hit a car carrying a family, killing the father and seriously injuring the mother and children. The defendant was sentenced to concurrent prison terms of from three to four years on the convictions of causing serious bodily injury, and to probation on the manslaughter conviction for a period of ten years thereafter. The sentencing judge also imposed several conditions of probation, including, among others, a seven-year ban on obtaining a driver's license and a requirement that if a license were issued, the defendant immediately surrender the license.

The defendant was released from his committed sentence in 2002 and began serving his term of straight probation. After making several inquiries regarding relaxing his conditions of probation so that he could obtain a license, all of which were rebuffed by his probation officer, the defendant obtained a license, drove a car, and was cited for speeding on the wrong side of the

---

[1]We apply this standard of review because all the claims of error presented by the defendant are unpreserved. The proper mechanism to challenge a probation revocation order is by direct appeal. *Commonwealth* v. *Christian*, 429 Mass. 1022, 1023 (1999). Here there was no direct appeal, and the claims of error with respect to the revocation of probation are therefore deemed waived. The defendant's previous effort to challenge his sentence in 2006 was properly treated as an untimely motion to revise and revoke pursuant to Mass. R.Crim.P. 29, 378 Mass. 899 (1979), and was, alternatively, filed and treated as a motion for new trial pursuant to Mass.R.Crim.P. 30(b), as appearing in 435 Mass. 1501 (2001). This challenge was unsuccessful, see *Commonwealth* v. *Doucette*, 71 Mass. App. Ct. 1104 (2008) (*Doucette I*), as was a subsequent motion for immediate release under Mass.R.Crim.P. 30(a). *Commonwealth* v. *Doucette*, 74 Mass. App. Ct. 1105 (2009) (*Doucette II*). Any claims not asserted in the first motion for new trial are also deemed waived. *Commonwealth* v. *Amirault*, 424 Mass. 618, 639 (1997).

road. Probation revocation proceedings ensued in January of 2006.[2] At the revocation hearing, a judge imposed a sentence of from nine to twelve years' imprisonment. This was the term of imprisonment the Commonwealth originally requested in 1998 and requested again in 2006 at the revocation hearing.

*Discussion.* 1. *Sentencing.*[3] "Few, perhaps no, judicial responsibilities are more difficult than sentencing. [The trial judge seeks] to take account of the human existence of the offender and the just demands of wronged society." *Commonwealth* v. *Rodriguez*, 461 Mass. 256, 259 (2012), quoting from *Graham* v. *Florida*, 130 S. Ct. 2011, 2031 (2010).

The defendant argues that the judge improperly relied on victim impact statements concerning the injuries to the family members, post-plea matters that pertained to victims of crimes of which he had already been convicted and for which he had completed his term of incarceration. The defendant also argues that the judge considered improper factors in sentencing him on the manslaughter conviction, namely that the judge impermissibly considered the conduct underlying the probation violation and punished him for the violation as well as the offense of manslaughter.

"[T]o impose a just sentence, a judge requires not only sound judgment but also information concerning the crimes of which the defendant stands convicted, the defendant's criminal and personal history, and the impact of the crimes on the victims." *Rodriguez, supra.* It was within the judge's discretion to permit the family of the decedent "to be heard at any time deemed appropriate by the court." G. L. c. 258B, § 3(*p*), as appearing in St. 1995, c. 24, § 5. The victim's family was also entitled to make a victim impact statement at sentencing or disposition. *Ibid.* The fact that they were also victims of separate crimes did not deprive them of the opportunity to give statements as the surviving family members of the manslaughter victim. As a

---

[2]After the initial bail hearing, the probation department learned that the defendant had also tested positive for cocaine, and it amended its statement of violations to include the positive drug test. The statement also alleged several other violations which we do not detail here.

[3]The judge correctly recognized the defendant's request to vacate his sentence as a motion under rule 30(a). See *Commonwealth* v. *Christian*, 429 Mass. 1022 (1999).

matter of law, nothing in such remarks may require resentencing. G. L. c. 279, § 4B.

The defendant's primary objection is to the judge's statement that he would apply the same standards that the original judge applied at the initial sentencing, namely that he would "tak[e] into account what happened to the victims" and that he "acknowledge[d] the pain and devastation that has been experienced by the victims." The defendant argues that the judge's phrasing was really a reference to the surviving victims' own injuries, and that the judge therefore punished him (again) for the offenses against them when sentencing him on the manslaughter offense. This argument ignores the fact that the judge could properly consider that the surviving family members lost a husband and father. They also had to contend with the lifelong consequences of serious and permanent injuries to themselves and their family members without the support of a husband and father. Moreover, the judge was entitled to read the transcript of the previous sentencing and consider the victim impact statements for purposes of understanding the original sentence as an organic whole, as well as the intent of the original sentencing judge. See *Wolcott, petitioner*, 32 Mass. App. Ct. 473, 478 (1992) (whole sentencing scheme may be considered in divining the intent of the sentencing judge); *Commonwealth v. Christian*, 46 Mass. App. Ct. 477, 482 & n.5, *S.C.*, 429 Mass. 1022 (1999). See generally *Commonwealth v. Morse*, 402 Mass. 735, 740 (1988) (sentencing judge may consider the facts attending the commission of the crime). The language to which the defendant objects was drawn from the first judge's comments at the original sentencing proceeding. It was relied on by the judge here as indicative of the original judge's intent to craft a sentence on all the charges, a sentence which the judge here found was meant to "provide an extraordinary chance for th[e] defendant to, perhaps, turn his life around."

The defendant also claims that the judge's statement that "in my eleven-and-a-half years as a [j]udge [I] have never seen such a flagrant disregard of conditions of probation on an extremely serious case where people should have known better" gave "impermissible weight" to the violations of probation and improperly punished him for the probation violation itself.

See *Commonwealth* v. *Rodriguez*, 52 Mass. App. Ct. 572, 577 n.8 (2001). The goals of punishment for the underlying offense, deterrence, protection of the public, and rehabilitation are valid considerations in sentencing after revocation of straight probation. See *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993). The defendant disregarded the conditions of probation. In particular, he persistently and wilfully pursued obtaining a license in express violation of the conditions of probation. He was cited for driving at an excessive rate of speed in heavy traffic on the wrong side of the road, the very conduct that led to death and the manslaughter conviction at issue. He tested positive for cocaine. All of these facts were probative of the likelihood (or lack thereof) of rehabilitation, and of the defendant's continuing threat to public safety. The judge's statement that the defendant "should have known better" was fair comment on his amenability to rehabilitation. Once the sentence of straight probation was revoked, the judge was permitted to impose any sentence recognized under law for the original offense. *Commonwealth* v. *Bruzzese*, 437 Mass. 606, 617-618 (2002).[4]

The defendant next argues that the judge was entitled to consider only his conduct as of the date of the original sentencing hearing and nothing thereafter. A defendant who has been placed on straight probation has not been "sentenced" in terms. For present purposes, the "period of straight probation is simply the deferral of a sentencing decision." *Rodriguez*, 52 Mass. App. Ct. at 577. The judge who imposes sentence after the revocation of a period of straight probation, see *Commonwealth* v. *Wilcox*, 446 Mass. 61, 65 & n.8 (2006), is "called upon to exercise a discretion not significantly different from that exercised by a sentencing judge after a finding of guilt." *Commonwealth* v. *Herrera*, 52 Mass. App. Ct. 294, 295 (2001). For this reason the judge may impose any sentence that could have been imposed at the original hearing, see *Bruzzese, supra*, but may not punish the defendant for the violation itself. See *Rodriguez*, 52 Mass. App. Ct. at 577 n.8.

The judge is not constrained to consider the record only as it

---

[4]For the same reasons, we also reject the defendant's double jeopardy claim. There was no double punishment. *Commonwealth* v. *Holmgren*, 421 Mass. 224, 227 & n.1 (1995).

existed at the first hearing, however. Because the judge is making, in effect, a new disposition, the judge may take into consideration intervening conduct to the extent that it sheds light on the permissible considerations of deterrence, protection of the public, and rehabilitation. See *Goodwin, supra* at 92-93. See also *Commonwealth* v. *Coleman*, 390 Mass. 797, 805 (1984) (sentencing judge may consider "indictments or evidence of similar or recurrent criminal conduct if it is relevant in assessing the defendant's character and propensity for rehabilitation"). In analogous circumstances, such as resentencing, information both favorable and unfavorable[5] to the defendant that has become available since the initial disposition is admissible to show a "defendant's character, behavior, and propensity for rehabilitation." *Commonwealth* v. *White*, 436 Mass. 340, 343 (2002). See *id.* at 344 n.3 (a resentencing is a "sentencing anew").[6] Because the imposition of sentence after revocation of straight probation is, in effect, sentencing "anew," the judge may properly consider information that was available to the first judge as well as information that has become available since the initial conviction and disposition.[7] The sentence here was permissible, and there was no risk — substantial or otherwise — of a miscarriage of justice.

---

[5]In the retrial and resentencing context, the common law of the Commonwealth requires that the only information that may be used to *enhance* a penalty is information that was *not* available to the first sentencing judge. *Commonwealth* v. *Hyatt*, 419 Mass. 815, 823 (1995). This means that a resentencing judge may consider information presented by the Commonwealth concerning a defendant's unfavorable conduct occurring subsequent to his original sentencing hearing. See *Commonwealth* v. *White*, 436 Mass. 340, 343-344 (2002). Here there is no issue of the enhancement of the penalty, since sentence is being imposed for the first time.

[6]In this regard, sentencing after an order to revoke straight probation is to be distinguished from a motion to revise and revoke, where the purpose of the proceeding is the reconsideration of the *original* sentence. See *White*, 436 Mass. at 344 n.3. Sentencing after revocation of straight probation is similarly distinguishable from sentencing after revocation of probation pertaining to a suspended or split sentence. See, e.g., *Commonwealth* v. *Holmgren*, 421 Mass. at 228; *Bruzzese*, 437 Mass. at 614, 616-617. See also *Rodriguez*, 52 Mass. App. Ct. at 577 n.9 (discussing impact of Truth in Sentencing Act, St. 1993, c. 432, § 11, on the practice of suspending sentences).

[7]Subject to the constraint that the sentence may not *punish* for such conduct. See *Goodwin*, 414 Mass. at 93; *Commonwealth* v. *Holmgren*, 421 Mass. at 227 n.1; *Rodriguez*, 52 Mass. App. Ct. at 577 n.8.

2. *The prosecutor's involvement.* The defendant argues that because the prosecutor made a sentencing recommendation and an opening and closing statement, in addition to presenting the probation department's case, the function of the probation department was usurped by the prosecutor in violation of art. 30 of the Massachusetts Declaration of Rights. "If the coordinated activity of branches of government is voluntary and the activity of one branch does not intrude into the internal function of another, the strictures of art. 30 are not violated." *Commonwealth* v. *Tate*, 34 Mass. App. Ct. 446, 448 (1993). See *Commonwealth* v. *Milton*, 427 Mass. 18, 22-23 (1998). Here the prosecutor was asked by the probation department to assist in the hearing, and the prosecutor was authorized by statute to be present and to be heard. See G. L. c. 279, § 3. See also *Commonwealth* v. *Negron*, 441 Mass. 685, 686-687 (2004). The probation department made its own recommendation regarding sentence, independent of and different from the prosecutor's, but "[w]hat disposition was to be made of [the defendant's] case was left, . . . ultimately, [to] the judge." *Tate*, *supra*.[8] These facts do not rise to the level of interference between branches of government, and there was no substantial risk of a miscarriage of justice.

3. *The guilty plea.* The defendant argues his plea was not knowing and voluntary because the original sentencing judge failed to inform him of the minimum and maximum sentences for the manslaughter charge, as is required when sentencing a defendant to straight probation. See *Commonwealth* v. *Murphy*, 73 Mass. App. Ct. 57, 59 (2008). During the plea colloquy, the judge explicitly informed the defendant of the maximum sentence. The crime of manslaughter does not carry a statutory minimum sentence. G. L. c. 265, § 13. "Rule 12(c)(3)(B) [of the Massachusetts Rules of Criminal Procedure] requires that a defendant be informed about the maximum sentence and any minimum mandatory sentence 'where appropriate.' " *Rodriguez*, 52 Mass. App. Ct. at 576, quoting from Mass.R.Crim.P. 12(c)(3)(B), 378

---

[8]At the request of the probation department and under the supervision of the presiding judge, the prosecutor may assist in the presentation of evidence. See *Tate*, 34 Mass. App. Ct. at 448. "There are some tasks, and [conducting examinations of witnesses and presenting evidence] are among them, for which lawyers are, indeed, particularly trained." *Ibid.*

Mass. 868 (1979).[9] The defendant here was provided with all "appropriate" information concerning his sentence during the plea colloquy.

> *Order denying motion to vacate sentence or for new trial affirmed.*

---

[9]The current version of the rule uses identical language. See Mass.R.Crim.P. 12(c)(3)(B), as appearing in 442 Mass. 1511 (2004).