Salinger, Kenneth W., J.
Anthony Dew has been indicted on six counts of human trafficking, one count of rape, two counts of assault and battery with a deadly weapon, one count of assault and battery, nine counts of distributing heroin or cocaine, and one count of possessing heroin with the intent to distribute it. Police detectives identified Mr. Dew as a suspect in these crimes in part through Global Positioning System location data recorded from a GPS tracking device that Dew was wearing as a condition of pretrial probation.
Mr. Dew asks the Court to suppress all evidence against him. He argues that: (1) the Probation Department violated Dew’s constitutional right to be free from unreasonable searches when it monitored Dew’s whereabouts and shared the GPS data it had collected with the police, all without a search warrant or probable cause to believe that Dew had committed any new crime; (2) Dew’s consent to the conditions of his pretrial probation was not valid because he had no reasonable alternative to agreeing to be electronically monitoring; and (3) the Probation Department violated the constitutional separation of powers by giving police officers the recorded data showing Dew’s location and movements.[1]
The Court concludes that these arguments are without merit and will therefore DENY Mr. Dew’s motion. First although Dew correctly notes that a pretrial detainee cannot validly consent to unconstitutional conditions of pretrial probation, that is not what happened here. The GPS tracking of Dew as a condition of pretrial probation fell within the “special needs” exception to the constitutional limitations on warrantless searches, and was lawful even without probable cause or reasonable suspicion to believe that Dew was engaged in criminal activity. Furthermore, Dew expressly agreed to be subject to constitutionally permissible round-the-clock GPS monitoring, that his GPS location and movements would be recorded, that these GPS data were neither private nor confidential, and that these data could be shared with law enforcement officials. As a result, Dew had no reasonable expectation of privacy in the recorded GPS data showing his movements, and thus the Boston police could obtain those data without first seeking a search warrant. Second, Mr. Dew’s consent to be subject to GPS tracking was voluntary and satisfied the statutory requirement that a defendant consent to the conditions of any pretrial probation. Third, the Probation Department *79 did not violate the constitutional separation of powers when it shared. Mr. Dew’s GPS location data with the Boston Police Department. This voluntary cooperation did not intrude into or interfere with any law enforcement or other executive branch functions. It therefore did not violate art. 30 of the Massachusetts Declaration of Rights.
1. Findings of Fact
The Court heard testimony from Superior Court Probation Officer Gavin Flanagan and Boston Police Detectives Timothy Murray and Ludwik Bartkiewicz and admitted five exhibits into evidence. The Court finds that these witnesses were credible and credits their testimony. The Court makes the following findings of fact based on this evidence and on reasonable inferences that the Court has drawn from this evidence.
On September 17, 2014, the New Bedford District Court placed Mr. Dew on pretrial probation, with Mr. Dew’s consent. Dew had been charged with five serious crimes: home invasion, assault with intent to murder, armed assault in a dwelling, malicious destruction of property, and mayhem. Judge Sabra ordered that Dew be released on $450 cash bail if he agreed to be subject to pretrial probation. The conditions of that probation included that Dew obey all laws and court orders, that he stay away from the alleged victims (who lived in New Bedford), that he stay out of New Bedford except for court dates (to ensure that he stayed away from the alleged victims), that he reside at a particular address in Dor-chester, Massachusetts, that he be subject to an 8 P.M. to 6 A.M. curfew, and that he be subject to round-the-clock GPS monitoring of his location and movements. The court docket indicates that this pretrial probation was imposed “by agreement.” Dew signed the pretrial probation order, and in so doing certified that he did in fact agree to be on pretrial probation and agreed to observe all of the conditions of that probation, including the GPS monitoring. Dew also signed a separate form certifying his understanding that data reflecting his GPS position would be recorded by the probation department, that those data “can be shared with my probation or parole officer, the court, attorneys and law enforcement,” and that “the data generated by the GPS equipment assigned to me is not private and confidential.”
On January 2, 2015, Det. Murray began to investigate a report by a woman who said that she had been orally raped by a man she knew as Anthony at a particular address in Dorchester in late November 2014. Murray located a police incident report from December 1,2014, concerning the same address. That report said that Mr. Dew was living there and that he was being monitored by a GPS tracking device. On January 4 Murray called the Probation Department’s electronic monitoring office (“ELMO”), which confirmed that it was backing Dew on GPS and that he was registered at the same Dorchester address from September 2014 to December 6, 2014.
At the same time, Det. Bartkiewicz was conducting a parallel investigation regarding possible human baffick-ing at the same address in Dorchester. He located a number of police incident reports that referenced Dew and placed him at that address. Based on those reports, Bartkiewicz contacted Dew’s probation officer for the New Bedford pretrial probation. On January 9, 2015, Bartkiewicz’s supervisor (Sgt. Det. Donna Gavin) called ELMO, spoke with Gavin Flanagan, and asked the Probation Department to provide GPS coordinates showing Mr. Dew’s whereabouts for specific dates during November 2014, December 2014, and January 2015. Flanagan complied. He sent the Boston Police Department color maps depicting Dew’s location and movements during the specified periods. Flanagan did so because itwas the Probation Department’s policy and practice to provide GPS data for particular pretrial or post-conviction probationers upon request by any Massachusetts police department or by the State Police. Det. Bartkiewicz followed up by asking ELMO to provide printer-friendly lists of Dew’s actual GPS locations. For some reason the Probation Department never provided the Boston police with those data in list form.
On January 13, 2015, Det. Bartkiewicz and Det. Robert Charbonnier applied for and obtained a warrant to search Mr. Dew’s new residence. At least some of the information contained in the detectives’ supporting affidavit was obtained as a result of the address and GPS information provided by the Probation Department.
2. Rulings of Law
For the reasons discussed below, the Court concludes that the Probation Department’s collection of GPS backing data regarding Mr. Dew and its sharing of those data with the Boston Police Department were both lawful.
2.1. Constitutional Prohibition of Unreasonable Searches
2.1.1. Consent and the Unconstitutional Conditions Docbine
In opposing the motion to dismiss, the Commonwealth relies primarily on Mr. Dew’s express consent to wearing a GPS tracking device as a condition of his pretrial probation. It argues that because of Dew’s consent he had no subjective or objectively reasonable expectation of privacy in the GPS data regarding his location and movements, and that the tracking of Mr. Dew was therefore not a search in a constitutional sense.[2] And it argues in the alternative that even if the constitutional prohibitions of unreasonable searches were implicated here, Dew had waived those rights by his explicit consent to the GPS backing.[3]
The Court is not convinced that Mr. Dew’s constitutional challenge to being subjected to GPS tracking can be resolved on the ground that he gave his consent. “(Ejxtended GPS elecbonic surveillance by the government” is a sufficient invasion of “one’s reasonable expectation of privacy” that, in general, it would violate art. 14 of the Massachusetts Declaration of Rights to conduct *80 such surveillance “without judicial oversight and a showing of probable cause.” Commonwealth v. Rousseau, 465 Mass. 372, 382 (2013). If in a particular case GPS tracking would be an unreasonable condition of pretrial probation in violation of art. 14, then “the State could not constitutionally require” the defendant to agree to such tracking “and any consent given would be ineffective.” O’Connor v. Police Commissioner of Boston, 408 Mass. 324, 329 (1990) (discussing constitutional limits on compelled consent by public employees to random drug screening); accord Commonwealth v. LaFrance, 402 Mass. 789, 791 n.3 (1988) (holding that compelled consent to unconstitutional search of probationer’s home was not effective).
Although the Supreme Judicial Court did not use the phrase in O'Connor and LaFrance, it was applying “the well-settled doctrine of ‘unconstitutional conditions.” Cf. Koontz v. St Johns River Water Mgmt. Dist. 133 S.Ct. 2586, 2594 (2013), quoting Dolan v. City of Tigard, 512 U.S. 374, 385 (1994). This doctrine “prevents] the government from coercing people into giving . . . up” particular constitutional rights as a condition for obtaining some discretionary benefit or other advantage from the government. Id. “By conditioning” receipt of a benefit or advantage on the recipient agreeing not to exercise some constitutional right, “the government can pressure” people into “voluntarily giving up” constitutional rights that the government could not otherwise take away. Id. “Extortionate demands of this sort” frustrate individuals’ constitutional rights, and therefore “the unconstitutional conditions doctrine prohibits them.” Id. at 2595.
“A predicate for any unconstitutional conditions claim is that the government could not have constitutionally ordered the person asserting the claim to do what it attempted to pressure that person into doing.” Koontz, supra, at 2598. In LaFrance, for example, the SJC held that art. 14 “forbidfs] the search of a probationer or her premises unless the probation officer has at least a reasonable suspicion that a search might produce evidence of wrongdoing,” and requires that the probation officer obtain a search warrant (based on a showing of such reasonable suspicion) before searching a probationer’s home. See 402 Mass. at 790, 794. In that case the defendant had pleaded guilty to burglary and larceny, been placed on probation for two years, and was then found to have violated the terms of that probation. Id. at 790. After revoking the defendant’s original probation, a Superior Court judge told the defendant he intended to sentence her to one year in the house of correction, and that he would suspend nine months of that sentence for a further two-year probationary term if, but only if, the defendant agreed as a condition of probation to be subject to warrantless searches at any time “of herself, her possessions, and any place where she may be.” Id. at 790. ‘The defendant accepted the conditions in order to limit the time she would have to serve in the house of correction.” Id. at 791. The SJ C held that this condition of probation authorized unreasonable searches in violation of art. 14, and that the defendant’s putative consent to this unconstitutional condition was ineffective because it was obtained in a “coercive” manner. Id. at 791-95 & n.3.
The Court concludes that the holding and analysis in LaFrance apply with full force here. If a defendant who has pleaded guilty to a crime cannot be compelled to consent to an unconstitutional search as a condition of post-conviction probation, as in LaFrance, then a defendant who is awaiting trial and still presumed innocent cannot effectively consent to an unconstitutional search as a condition of pretrial probation. See United States v. Scott, 450 F.3d 863, 868 (9th Cir.2005) (applying unconstitutional conditions doctrine to pretrial probationer’s consent to searches).
Thus, as in LaFrance, the Court must determine whether the pretrial probation condition that Mr. Dew be subject to GPS tracking was reasonable and permissible under art. 14. If so, then Mr. Dew’s consent was not needed as a constitutional matter and the unconstitutional conditions doctrine would not apply. “The question here is not whether all pretrial releases must agree to all searches.” Scott, 450 F.3d at 896 (Callahan, J., and six other justices, dissenting from denial of rehearing en banc). Instead, the question is whether it was reasonable under the circumstances of Mr. Dew’s district court case to require that he be subjected to round-the-clock GPS monitoring over a period of several months.
2.1.2. Reasonableness of GPS Tracking
As noted above, the GPS tracking of Mr. Dew by the Probation Department was a search in the constitutional sense (under both the art. 14 and the Fourth Amendment to the United States Constitution) because it intruded upon Dew’s reasonable expectations of privacy. See Rousseau, 465 Mass, at 378-82. It does not automatically follow, however, that the Probation Department needed to obtain a search warrant before it electronically monitored and recorded Mr. Dew’s location.
The GPS tracking of Mr. Dew as a condition of pretrial probation was permissible under the so-called “special needs” exception to the constitutional requirements for search warrants. Article 14 and the Fourth Amendment “do not prohibit all searches—only those searches that are unreasonable.” Commonwealth v. Alvarez, 422 Mass. 198, 209 (1996).[4] “[N]either a warrant nor probable cause, nor, indeed, any measure of individualized suspicion, is an indispensable component of reasonableness in every circumstance.” O’Connor, 408 Mass, at 327, quoting National Treasury Employees Union v. Von Raab, 489 U.S. 656, 665 (1989). Ajudicial warrant issued upon probable cause is not required under art. 14 or the Fourth Amendment “when ‘special needs, beyond the normal need for law enforcement,” outweigh “the individual’s privacy expectations” and make it “impractical to require a warrant or some level of individualized suspicion in the particular context.” IcL, quoting Von Raab at 665-66; accord, e.g., Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). Under art. 14, this exception to the *81 warrant requirement only applies where the “special need” at issue concerns “a concrete, substantial governmental interest” demonstrated through actual facts; it cannot be invoked based “on some generalized sense” of a problem based only on assumed facts. Compare Guiney v. Police Comm'r of Boston, 411 Mass. 328, 332-33 (1991) (holding that non-consensual drug testing of police officers violated art. 14, at least in absence of evidence “that there is a drug problem in the Boston police department”), with Commonwealth v. Grant, 57 Mass.App.Ct. 334, 339-40 (2003) (upholding emergency roadblock and stopping of motorists without particularized suspicion, where police had concrete evidence that armed suspects were fleeing scene of shooting).
All of the requirements of this “special needs” exception were met in this case. Pretrial electronic monitoring of Mr. Dew was justified to protect the public safety while Dew was awaiting trial (by ensuring that he stayed away from his alleged victims in New Bedford and abided by his nighttime curfew), to assure that Dew appeared in court even though he faced serious charges, and to allow Dew to be located if he did not appear. These are special needs that went beyond the normal need for law enforcement and that are legitimate aims of imposing bail with conditions of pretrial probation in the particular, concrete circumstances of Dew’s district court case. Cf. Emelio E. v. Commonwealth, 453 Mass. 1024, 1025 (2009) (a ‘judge retains discretion to impose, or not impose, GPS monitoring as a condition of pretrial probation” in appropriate circumstances); Commonwealth v. Power, 420 Mass. 410, 414 (1995) (“[t]he primaiy goals” of probation “are rehabilitation of the probationer and protection of the public”); Commonwealth v. Ray, 435 Mass. 249, 255 n.12 (2001) (“The puipose of bail is to assure the defendant’s appearance in court”). The governmental interest in protecting Mr. Dew’s alleged victims from further attack and in assuring the Mr. Dew appeared in court substantially outweighed his interest in keeping his location secret. Finally, it was impractical to require individualized suspicion of misbehavior before subjecting Dew to electronic monitoring, because the legitimate prophylactic goals of the GPS tracking imposed upon Mr. Dew by the district court could not be accomplished if not begun until after Dew had already violated other conditions of his release.
In sum, warrantless GPS tracking of Mr. Dew was reasonable under the circumstances of this case, and thus Mr. Dew’s art. 14 and Fourth Amendment rights to be free from unreasonable searches were not implicated.
2.1.3. Sharing of GPS Data with the Police
Nor was a warrant required before Boston police officers requested and obtained Mr. Dew’s GPS location data that had been recorded by the Probation Department. The police request for Dew’s GPS data did not implicate art. 14 or the Fourth Amendment because Dew had no reasonable expectation of privacy in those data. The gathering of materials or information is a search in a constitutional sense only if it “has intruded on a constitutionally protected reasonable expectation of privacy.” Commonwealth v. Montanez, 410 Mass. 290, 301 (1991). “We determine whether the defendant has a reasonable expectation of privacy by considering ‘(1) whether the defendant has manifested a subjective expectation of privacy in the object of the search, and (2) whether society is willing to recognize the expectation as reasonable.’ ” Commonwealth v. Williams, 453 Mass. 203, 208 (2009), quoting Montanez, supra
Dew was on notice and acknowledged in writing that the GPS data documenting his location and movements would be recorded, would not be considered private, and could be shared with law enforcement officials. Furthermore, as discussed above, the electronic monitoring of Dew and the recording of those GPS data served legitimate interests of pretrial probation.
As a result, Dew had no reasonable expectation that any of that information would be kept private. See In the Matter of a Grand Jury Subpoena 454 Mass. 685,688-91 & n.6 (2009) (pretrial detainees and inmates had no reasonable expectation in privacy of telephone calls made from jail because they were on notice that calls would be recorded, and practice of recording and monitoring calls served legitimate penological interests). Since Dew had no reasonable expectation of privacy in the GPS data, his constitutional rights were not violated when the Boston Police Department obtained that information without first obtaining judicial approval. IcL at 692-93 (sheriff commits no constitutional violation by providing recordings of such phone calls to grand jury in response to subpoena, without a warrant or other judicial approval).
2.2. Consent to GPS Tracking— Statutory Requirement
Mr. Dew’s consent to the conditions of his pretrial probation was required by statute, even though the constitutionality of the GPS backing did not turn on consent. See G.L.c. 276, §87.
The Court finds that Dew’s explicit consent to all the terms of his pretrial probation, including the GPS backing, was voluntary and thus valid because it was “entered without coercion, duress, or improper inducements.” Commonwealth v. Berrios, 447 Mass. 701, 708 (2006). Dew’s assertion that he felt compelled to give his consent, because his other alternative was to be held pending trial on a higher bail that he would be unable to post, does not demonstrate that his consent was coerced. A defendant’s choice to plead guilty may be willing and voluntary even if the defendant felt compelled to accept a plea bargain in order to avoid the risk of more dire consequences should he be found guilty of all current charges after trial. Id at 709; Commonwealth v. Leate, 367 Mass. 689, 694 (1975). Much the same is true here. Assuming that Dew had no bargaining power to resist the request that he agree to elecbonic monitoring, that alone does not mean that his agreement is voidable or invalid on the ground of duress. See Cabot Corp. v. AVX Corp., 448 Mass. 629, 639 (2007) (discussing and apply *82 ing doctrine of economic duress under contract law); Okoli v. Okoli, 81 Mass.App.Ct. 381, 389 (2012) (same).
Dew characterizes his pretrial probation contract as a contract of adhesion, because he had to accept the condition of GPS tracking in order to have bail set in an amount he could afford to post. ‘This is a technically correct description in that the terms of the contract were provided by” the district court and the Probation Department “and were not the subject of active negotiation. That label makes no difference, however, because ‘contracts [of adhesion] are enforceable unless they are unconscionable, offend public policy, or are shown to be unfair in the particular circumstances.’ ” Miller v. Cotter, 448 Mass. 671, 684 n. 16 (2007) (enforcing arbitration provision in nursing home admission contract), quoting Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 253 (1992) (enforcingjuiy waiver provision inloan agreement); accord, e.g., Santos v. Lumbermens Mat. Cas. Co., 408 Mass. 70, 85-86 (1990) (enforcing subrogation provision in standard motor vehicle insurance policy). For the reasons discussed above, Dew’s pretrial probation contract was none of these things. To the contrary, it was reasonable, consistent with public policy, and perfectly fair to condition Dew’s pretrial probation on the condition that he agree to GPS tracking to enforce the stay-away and curfew orders. His voluntary consent is therefore valid and enforceable.
Dew’s further argument that he was never “informed of [the] legal significance” of signing the consent form is also unavailing. As a matter of constitutional law, consent to a search must be voluntary, but a waiver of any objection to a search need not be knowing and intelligent. See Commonwealth v. Santos, 465 Mass. 689, 698 (2013); Commonwealth v. Costa, 65 Mass.App.Ct. 227, 232 (2005); accord Commonwealth v. Rogers, 444 Mass. 234, 237 & n.4 (2005); Schneckloth v. Bustamonte, 412 U.S. 218, 235 (1973). The same is true with respect to the consent requirement in the pretrial probation statute.
2.3. Separation of Powers
Finally, Mr. Dew’s assertion that the Probation Department violated the constitutional separation of powers when it shared his record GPS data with local police officers is also without merit.
The Massachusetts Constitution includes an explicit separation of powers provision which states that:
In the government of this commonwealth, the legislative department shall never exercise the executive and judicial powers or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men.
Art. 30 of the Declaration of Rights. The Probation Department and its functions are within the judicial branch, and thus the supervision of a pretrial probationer is an exercise of judicial power. See Commonwealth v. Milton, 427 Mass. 18, 22 (1998); Commonwealth v. Tate, 34 Mass.App.Ct. 446, 447 (1993). In contrast, the work of local and state law enforcement officials to discover, investigate, and prosecute crime is an exercise of executive power. See, e.g., Commonwealth v. Martin, 447 Mass. 274, 283-84 (2006) (investigating crime); Commonwealth v. Cheney, 440 Mass. 568, 573-74 (2003) (prosecuting crime); Commonwealth v. Favulli, 352 Mass. 95, 101 (1967) (discovering crime).
“While the principle of separation of powers is thus deeply entrenched within this Commonwealth, an absolute division between the three governmental departments is ‘neither possible nor always desirable.’ ” Clerk of Superior Court for Middlesex Cnty. v. Treasurer & Receiver Gen., 386 Mass. 517, 525 (1982), quoting Opinion of the Justices, 365 Mass. 639, 641 (1974).
“If the coordinated activity of branches of government is voluntary and the activity of one branch does not intrude into the internal function of another, the strictures of art. 30 are not violated.” Commonwealth v. Doucette, 81 Mass.App.Ct. 740, 746 (2012) (prosecutor did not violate separation of powers by assisting in probation revocation hearing at request of probation department, including presenting case making opening and closing statement, and making sentencing recommendation), quoting Commonwealth v. Tate, 34 Mass.App.Ct. 446, 448 (1993). Thus, art. 30 bars one branch of government from interfering with another, but it does not bar the various branches from willingly cooperating with and assisting each other. See Commonwealth v. Bukin, 467 Mass. 516, 522-23 (2014) (district attorney’s office did not violate separation of powers when it assisted probation officer in conducting a probation violation hearing, at the request of the probation officer, because doing so did not “interfere unduly with a probation officer’s conduct of a probation hearing”).
Here, the Boston Police Department requested certain GPS data and information, and the Probation Department cooperated with and assisted the Boston Police by providing the requested information. In so doing the Probation Department did not usurp the functions of law enforcement or otherwise intrude upon or interfere with any executive branch functions. There was no separation of powers violation.
ORDER
Defendant’s motion to suppress evidence is DENIED.

 At oral argument Mr. Dew’s counsel waived any claim that the evidence against him should be suppressed for any other reason.

 See, e.g., Commonwealth v. Augustine, 467 Mass. 230, 241 (2014) (“Under both the Federal and Massachusetts Constitutions, a search in the constitutional sense occurs when the government’s conduct intrudes on a person’s reasonable expectation of privacy”).

 See, e.g., Commonwealth v. Dejarnette, 75 Mass.App.Ct. 88, 95 (2009) (“Police may conduct a warrantless search with the free and voluntary consent of a person possessing the ability and apparent authority to consent”) (quoting Commonwealth v. Yehudt Y., 56 Mass.App.Ct. 812, 816 (2002)).

 “The Fourth Amendment to the United States Constitution protects the ‘right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures.’ Article 14 of the Massachusetts Declaration of Rights similarly protects against ‘unreasonable searches, and seizures, of [one’s] person, [one’s] houses, [one’s] papers, and all [one’s] possessions.’ ” Commonwealth v. Sheridan, 470 Mass. 752, 756 (2015).