The defendant, Alex M. Brito, appeals from a District Court order on his motion for reconsideration, finding that he violated the terms and conditions of his probation by distributing heroin.[2] The defendant contends that the judge erroneously relied on unreliable hearsay and that the evidence was insufficient to prove the violation. We affirm.
1. Sufficiency of the evidence. To revoke probation, the Commonwealth must prove a violation by a preponderance of the evidence. See Commonwealth v. Holmgren, 421 Mass. 224, 226 (1995) ; Commonwealth v. Wilcox, 446 Mass. 61, 65 (2006). On appellate review, "[t]he question is whether the record discloses evidence sufficient to warrant the finding by the judge that [the probationer] had violated the terms of probation." Commonwealth v. Tate, 34 Mass. App. Ct. 446, 449-450 (1993).
Three Boston police officers, James Stoddard, Kevin McElmoyle, and Gino Rodrigues, testified at the probation violation hearing. The judge found "that all three of [the police officers] are credible witnesses." "[W]e do not disturb the judge's credibility determinations as fact finder." Commonwealth v. Nunez, 446 Mass. 54, 59 (2006). Based on the officers' testimony, the judge could have found the following facts.
On January 13, 2017, Stoddard, McElmoyle, and Rodrigues, along with Sergeant Detective Donald Keenan and Detective John Boyle, were monitoring Ramsey Park for signs of drug activity. Two men, Michael Gladunov and Richard Barker, caught Stoddard's attention. Gladunov, whom Stoddard had previously arrested for drug violations, was speaking on a cellular telephone (cell phone) in a "very animated" manner. Stoddard alerted the other officers as he watched the two men; he lost sight of them as they made their way through the streets.
Stoddard found Barker "a few minutes later" standing alone on Williams Street. Barker quickly turned and ran the other way. In the meantime, Rodrigues saw Gladunov walking away from the passenger side of a gray Nissan with Florida license plates, parked with the engine running, in the environs of Shawmut Avenue and Williams Street. Gladunov and Barker then met up again and walked back toward the park.
Keenan, Boyle, and McElmoyle stopped the two men. The officers recovered a bag of heroin from Barker and syringes from both men. Barker said that he gave Gladunov $40 to buy heroin, and that Gladunov had agreed to take him to buy the drugs. After initially denying any wrongdoing, Gladunov said that he bought a bag of heroin for $20 from a man in a car who went by the name "Angel." Gladunov claimed to have swallowed the drugs. His cell phone showed four recent calls with "Angel" at two different phone numbers.
After learning of Gladunov's and Barker's statements and the items seized from them, Stoddard radioed for a marked Boston police cruiser to stop the gray Nissan. Stoddard and Rodrigues approached the vehicle; the defendant was the driver and sole occupant. Rodrigues ordered him out of the car and handcuffed him while Stoddard read him his Miranda rights. Rodrigues searched the defendant and recovered $40 from his hand, along with a folding knife, and two clear plastic bags, one of which had two corners torn off. He also found a cell phone in the center console of the car. Rodrigues dialed one of the numbers for "Angel" shown on Gladunov's phone, and the defendant's phone rang.
During booking, an additional $20 was found on the defendant's person. The defendant told Keenan something to the effect that "he had seen the South Bay and it would be good for Russian," a reference to Gladunov.
The judge found "by a preponderance of the evidence" that the defendant "actually did sell heroin to two heroin users." The evidence presented a strong circumstantial case that Gladunov arranged by telephone to purchase heroin from the defendant for himself and Barker, that the defendant sold them two $20 bags, and that they each took one for personal use. While alternative explanations of the evidence may be possible, the judge was not required to credit those explanations. See Nunez, 446 Mass. at 59-60 ; Tate, 34 Mass. App. Ct. at 449-450. We discern no clear error or abuse of discretion.
2. Hearsay. The defendant further contends that the judge erroneously relied on unreliable hearsay evidence to find him in violation: his statement referring to the "Russian," which he made to Keenan but was introduced through Stoddard's testimony; Barker's statement to Keenan, introduced through both Stoddard and McElmoyle, that he gave Gladunov money to buy heroin; and Gladunov's statement to McElmoyle that he bought a $20 bag of heroin from "Angel."
At a final probation revocation hearing, a probationer must "be given the right to confront and to cross-examine witnesses, unless the judge finds 'good cause' to dispense with these requirements." Commonwealth v. Maggio, 414 Mass. 193, 197 (1993). Reliable hearsay evidence satisfies the "good cause" requirement. See Commonwealth v. Negron, 441 Mass. 685, 691 (2004) ; Commonwealth v. Henderson, 82 Mass. App. Ct. 674, 676 (2012). Indeed, a probation violation may be proved by hearsay alone if the hearsay has substantial indicia of reliability, although "[u]nsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation." Commonwealth v. Durling, 407 Mass. 108, 118 (1990).
"In assessing whether the hearsay evidence is reliable, a hearing judge may consider (1) whether the evidence is based on personal knowledge or direct observation; (2) whether the evidence, if based on direct observation, was recorded close in time to the events in question; (3) the level of factual detail; (4) whether the statements are internally consistent; (5) whether the evidence is corroborated by information from other sources; (6) whether the declarant was disinterested when the statements were made; and (7) whether the statements were made under circumstances that support their veracity." Commonwealth v. Hartfield, 474 Mass. 474, 484 (2016). "There is no requirement that hearsay satisfy all the above criteria to be trustworthy and reliable." Commonwealth v. Patton, 458 Mass. 119, 133 (2010).
The out-of-court declarations of the participants in the drug transaction, as offered by the three testifying officers, were substantially reliable. The statements were internally consistent. They were corroborated by the officers' direct observations and by the evidence seized from the participants. Stoddard recorded the statements in his report contemporaneously with the processing of the men at the police station.[3]
Additionally, "[e]vidence which would be admissible under standard evidentiary rules is presumptively reliable." Durling, supra. Gladunov's and Barker's statements were admissible as statements against penal interest. See Mass. G. Evid. § 804(b)(3) (2018). Gladunov admitted to buying heroin, and Barker admitted to giving Gladunov money to purchase heroin. Likewise, the defendant's statement was admissible as an admission of a party opponent. See Mass. G. Evid. § 801(d)(2). The judge did not abuse his discretion in admitting and relying on the out-of-court statements.
Conclusion. We affirm the order entered August 29, 2017.
So ordered.
Affirmed

In an order entered April 4, 2017, the defendant's probation was revoked upon a finding of probation violation. The defendant appealed from that order, and on the same day, filed a motion for reconsideration. On the defendant's motion for reconsideration, the judge reinstated the defendant's probation, but expressly affirmed his prior finding of a probation violation. The defendant appealed from the order on the motion for reconsideration, entered August 29, 2017, and we consolidated the two appeals. Because the order on the motion for reconsideration incorporates the finding of probation violation in the April 4 order, we need act only on the order concerning the motion for reconsideration.
The Commonwealth has filed a suggestion of mootness based on the fact that the defendant later stipulated to another violation, his probation was again revoked, and the sentence was imposed again. Because the probation violation may have collateral consequences other than imprisonment, cf. Blake v. Massachusetts Parole Bd., 369 Mass. 701, 704 (1976), we reach the merits.

The defendant further contends that his statement referring to the "Russian" was totem pole hearsay. But this argument is based on the inadmissibility rather than the reliability of the statement. Because reliable hearsay statements are admissible in probation revocation hearings, the point is immaterial.